**Richmond.**

LACEY v. PALMER, SHERIFF.

APRIL 29, 1896.

1. HABEAS CORPUS—*Office of writ—Legality of imprisonment only.*—The office of the writ of *habeas corpus* is not to determine the guilt or innocence of the prisoner, but only the legality of his imprisonment. If a prisoner is held under a proper process for an offence created by a valid statute, he must await the trial in the mode prescribed by law.

2. CONSTITUTIONAL LAW—*Title of act—Several objects—Partly valid.*—The constitutional provision that "no law shall embrace more than one object, which shall be expressed in its title," is not violated by an act containing more than one object, if the objects embraced in the act, but not expressed in its title, have congruity or natural connection with the object stated in the title, or are cognate or germane thereto; and the act will be held valid if the title is broad enough to cover the objects expressed in the act. But if the title is not broad enough to cover the act, it is valid only to the extent that the object is expressed in the title. The Constitution is to be construed so as to uphold the law if practicable.

3. CONSTITUTIONAL LAW—*Title of Act of February 29, 1896, against "Pool-selling"—Effect of " and so forth" in Title.*—The Act of Assembly approved February 29, 1896, to prevent "pool-selling and so forth" (Acts 1895-'96, c. 539, p. 576) has but one object, but it is broader than its title, and is therefore unconstitutional as to all of the offences created by it except "pool-selling" on horse races. The words "and so forth" express nothing and mean nothing as a compliance with the constitutional provision.

4. CONSTITUTIONAL LAW—*Acts against Pool-selling and Gambling—Interstate Commerce—Conflict of Acts.*—The object of the Act of Assembly approved February 29, 1896, to prevent "pool-selling and so forth" (Acts 1895-'96, c. 539, p. 576) is the suppression of gambling in one of its most attractive forms, and not a regulation of commerce between the States, though it may incidentally affect it, and is within the police power reserved to the State; and neither is this act, nor

the act approved on the same day "to prevent gambling and sell-
ing or making books," &c., in conflict with Article I, section 8,
clause 3, of the Constitution of the United States; nor are the two
acts in conflict with each other. The latter act is in full force and
vigor.

5. CONSTITUTIONAL LAW—*Bets or Wagers on Races beyond State—State's
Jurisdiction over Parties Betting Here.*—The State of Virginia has
authority, by statute, to forbid its citizens to bet on horse racing in
another State, and this right is not affected by the fact that the
money is to be placed in a third State. The act forbidden is the
wager, and over it and the actors in it, the State has complete juris-
diction. It is immaterial where the race takes place.

6. WARRANT OF ARREST—*Particularity of.*—Warrants of arrest are re-
quired to recite the offence charged, but the same particularity is
not expected or required as in indictments, though greater precision
should be observed in future, since justices of the peace have been
given exclusive original jurisdiction of all misdemeanors.

7. MISDEMEANORS—*Juridiction over—Pending Cases—Commitment to an-
swer Indictment.*—Since March 5, 1896, justices of the peace have
exclusive original jurisdiction of all misdemeanors. By the act ap-
proved March 5, 1896, all orginal jurisdiction over misdemeanors was
taken away from the County and Corporation Courts even in pend-
ing cases, and a warrant of commitment issued since March 5, 1896,
to answer an indictment in a County Court for a misdemeanor, is
void.

On a writ of *habeas corpus* directed to William H. Palmer,
sheriff and *ex officio* jailer of Alexandria county.

*Prisoner discharged.*

The petitioner was arrested on a warrant issued by a jus-
tice of the peace of Alexandria county, on March 31, 1896,
charging that the petitioner " on the 31st day of March, 1896,
and on divers other days and times within twelve months
last past, in the said county, did unlawfully, by various ways,
means, and devices, make bets and wagers, and receive and
record and register and forward and purport and pretend to
forward money, things, and considerations of value to be
bet and wagered upon the result of a trial of speed and power
of endurance and skill of animals, to-wit, horses, to take

place beyond the limits of the Commonwealth of Virginia, and by various ways, means, and devices did unlawfully aid, assist, and abet in the making of bets and wagers, and the receiving, recording, and registering and forwarding and purporting and pretending to forward money, things, and considerations of value to be bet and wagered upon the result of a trial of speed and power of endurance and skill of animals, to-wit, horses, to take place beyond the limits of the Commonwealth of Virginia, and did unlawfully aid and assist and abet in various ways and manners in unlawfully making bets and wagers, and in receiving, recording, registering, forwarding, and purporting and pretending to forward money, things, and considerations of value to be bet and wagered upon the result of a trial of speed and power of endurance and skill of animals, to-wit, horses, to take place beyond the limits of the Commonwealth of Virginia."

The petitioner was arrested and carried before a justice of Alexandria county, who, "being of opinion upon an examination of the said Richard M. Lacey touching the said offence, that he ought to be tried therefor in the County Court of said county, required bail of him in the sum of three hundred dollars, for his appearance to answer an indictment for said offence on the first day of the September, 1896, term of the said court, and he having failed to find such bail," committed him to the custody of the jailer of said county, who was required to receive him into the jail of said county, and there safely keep him until he should thence be delivered by due course of law.

Thereupon the petitioner applied to this court for a writ of *habeas corpus*, which was awarded. The jailer returned that he held the petitioner by virtue of the *mittimus*, which he made a part of his return. The petitioner demurred to the return.

*Samuel G. Brent. R. Walton Moore, Francis L. Smith* and *Edmund Burke,* for the petitioner.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

This is a petition for a writ of *habeas corpus* addressed to this court by Richard M. Lacey, who alleges that he is detained without lawful authority and deprived of his liberty by one William H. Palmer, sheriff, and *ex officio* jailer, of the county of Alexandria.

It seems that he was committed to the custody of the sheriff by virtue of a warrant dated the 31st of March, 1896, charged with violating an act of the Legislature, approved February 29, 1896 (Acts 1895-6, ch. 539, p. 576), which declares it to be " unlawful for any person or persons, or association of persons, corporation or corporations, by any ways, means, or devices to make any bet or wager, or receive or record or register, or forward, or purport or pretend to forward, any money, thing, or consideration of value to be bet· or wagered upon the result of any trial of speed or power of endurance or skill of animals or beasts which is to take place beyond the limits of this Commonwealth, or by any ways, means, or devices to aid, assist, or abet in making of any bet or wager, or the receiving, recording, or registering, or forwarding or purporting or pretending to forward, any money, thing, or consideration of value to be bet or wagered upon the result of any trial of speed or power of endurance or skill of animals or beasts which is to take place beyond the limits of this Commonwealth, or to aid or assist or abet in any way or in any manner in any of the acts forbidden by this act.

" 2. That any person or persons or association of persons or corporation or corporations violating the provisions of

this act, shall be fined not less than two hundred nor more than five hundred dollars, and be imprisoned not less than thirty nor more than ninety days."

The warrant of arrest does not charge the defendant with having done any of the specific acts which the statute just quoted makes unlawful, but avers in general terms that the defendant, with others named in the said warrant, was guilty of each and all of the acts forbidden therein; and the commitment commands the sheriff to deliver Richard M. Lacey to the custody of the jailer of the county of Alexandria to answer an indictment for the offence thus described, at the September term of the County Court.

The petitioner claims that this statute is repugnant to Article V., section 15, of the Constitution of Virginia; that it is repugnant to Article I., section 8, clause 3, of the Constitution of the United States; that it is inoperative, because two laws received the signature of the Governor upon the same day which are inconsistent, the one with the other, and, as there is no means of determining which of the two is the last expression of the legislative will, neither can be operative, the one repealing the other by necessary implication; that the warrant in this case is void because it is vague and indefinite, and does not with sufficient certainty recite the offence with which the petitioner is charged, as required by section 3956 of the Code; and, finally, that the commitment is a nullity because by section 4106 of the Code, as amended by Act of the General Assembly of Virginia, approved March 5, 1896 (Acts 1895–6, ch. 845, p. 924), it was the duty of the justice to try the prisoner for the offence with which he was charged instead of committing him for trial by the County Court.

The office of the writ of *habeas corpus* is not to determine the guilt or innocence of the prisoner. The only issue which it presents is whether or not the prisoner is restrained of his liberty by due process of law.

A person held under proper process to answer for an offence created by a statute enacted within the constitutional power of the Legislature cannot be discharged upon a writ of *habeas corpus,* however clear his innocence may be, but must abide his trial in the mode prescribed by law.

Is the statute under consideration repugnant to the Constitution of the State? Article 5, section 15, of the Constitution declares that "no law shall embrace more than one object which shall be expressed in its title." This section has been recently construed by this court, which ruled that it was intended to forbid the use of deceptive titles as a cover for vicious legislation; to prevent bringing together in one bill subjects diverse and dissimilar in their nature and having no necessary connection with each other; and to avoid surprise in matters of which the title gave no intimation. See *Commonwealth* v. *Brown,* 91 Va. 762; *Ingles* v. *Straus,* 91 Va. 209.

The title of the act in question is as follows: "An act to prevent pool-selling, and so forth, upon the results of any trials of speed of any animals or beasts taking place without the limits of the Commonwealth."

A pool is defined by the Century Dictionary to be, in horse racing, ball games, etc., "the combination of a number of persons, each staking a sum of money on the success of a horse in a race, the contestant in a game, etc., the money to be divided among the successful betters according to the amount put in by each." It is, therefore, one of the forms of making bets or wagers upon horse races, while the statute makes "unlawful a bet or wager by any ways, means, or devices, or the receiving, or recording, or registering, or forwarding or purporting or pretending to forward any money, thing, or consideration of value to be bet or wagered upon the result of any trial of speed or power of endurance, or skill of animals or beasts which is to take place beyond the limits of the Commonwealth." Without quoting further

from the act, which is set out in full in the warrant, it suf-
ficiently appears that it is far broader and more comprehen-
sive than its title.   It may be said to embrace the *genus*,
while the title only sets out a particular *species*.   The act
makes unlawful almost every conceivable form of making
bets or wagers upon the results of trials of speed of horses,
while the title only mentions the particular form of wager
or bet known as a " pool " or " pool-selling."

Cooley, in his work on Const. Lim., speaking of the effect
of such a constitutional provision as that under considera-
tion, where the act is broader than the title, says: " In such
a case it may happen that one part of it can stand, because
indicated by the title; while as to the objects not indicated
by the title, it must fail."

We do not consider the act as obnoxious to that part of
the clause of the Constitution, just quoted, which says that
"no law shall embrace more than one object."  The object of
this law is the suppression of gambling, or that form of gam-
bling, where the bet or wager is made upon the speed or
endurance or skill of animals or beasts, for, as was said
in *Ingles* v. *Straus, supra:* "If the subjects embraced by the
statute, but not specified in the title, have congruity or
natural connection with the subject stated in the title, or
are cognate or germane thereto, the requirement of the
Constitution is satisfied."   Were the title sufficiently broad
to cover the objects declared in the bill, there would be,
in our judgment, no repugnancy to the constitutional pro-
vision in question, because all the provisions of the act
may fairly be regarded as in furtherance of a single object,
"the suppression of gambling."   The Constitution, more-
over, is to be construed so as to uphold the law if practi-
cable.   All that is required by the constitutional provision
is that the subjects embraced in the statute, but not speci-
fied in the title, shall be congruous, and have natural con-

nection with, or be germane to, the subject expressed in the title. *Com.* v. *Brown* (*supra*), at page 772.

There is no such incongruity of objects and purposes in the statute as to render it obnoxious to the clause under consideration. The act, however, is far broader than the title, and can therefore only be operative as to that part of it which is indicated by its title. In other words, the only offence which can be punished by virtue of this statute is the particular form of making a bet or wager known as "pool-selling."

It is claimed on behalf of the Commonwealth that the defect is cured by the use of the words "and so forth," but in this view we cannot concur. The provision of the Constitution is mandatory. We think it is a wise and salutary provision, but whether it be or not, it is the law of the land, and must be obeyed. To hold that the Legislature could, by the use of such a phrase as "and so forth" supply an omission and cure an otherwise defective title would be to fritter away the constitutional provision, and render it illusive and nugatory. See Cooley on Const. Lim. (6th ed.), p. 174. These words express nothing, and amount to nothing as a compliance with this constitutional requirement. Nothing which the act would not embrace without them can be brought in with their aid. *Fishkill* v. *Fishkill*, 22 Barb. 634; *Johnson* v. *Spicer*, 107 N. Y. 185.

We are of opinion, therefore, that, while the body of the act is broader than its title, and the title is not aided by the introduction of the phrase just discussed, the statute is not wholly inoperative for repugnancy to the Constitution of the State, but is a valid law so far as it makes pool-selling an offence and prescribes the punishment for it.

We will now proceed to consider the alleged repugnancy of the act in question to Article I, clause 3, section 8 of the Constitution of the United States, which declares that "Congress shall have power to regulate commerce with foreign

o

nations, and among the several States, and with the Indian Tribes." In discussing this branch of the case we shall treat the subject as though the prisoner were charged specifically with the offence of selling in Virginia a pool upon a trial of speed of horses to take place at St. Louis, as he can under the statute, set forth in the warrant be found guilty of none other.

It is conceded that the power thus conferred is, when exercised by Congress, exclusive in its operation. It is also conceded that the abstention on the part of Congress from passing laws in the exercise of its power to regulate commerce is equivalent to an expression of its will that, in those respects in which it can be reached and controlled by regulations of a general character, it shall remain free. On the other hand, there is a reserve of power and duty in the States, the due exercise of which is essential to the maintenance of order, the preservation of health, and the promotion of good morals. In fact, almost the whole of the great body of municipal law which establishes and enforces the duties of citizens to each other, is embraced within and known as the police power. In it is to be found, says Blackstone, 4 Com. 162, the " due regulation and domestic order of the kingdom whereby the inhabitants of a State, like members of a well governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good morals, and to be decent, industrious, and inoffensive in their respective stations." The professed object of all government is to promote the general welfare, and it cannot be denied, that the subjects enumerated in the above extract are of prime importance not only to the welfare and happiness of men, but are essential to their very existence in a state of civilized society. The object of the law is the suppression of gambling in its most attractive, seductive, and, therefore, the most dangerous of its many forms. That gaming is a vice which it is the right and duty

of a State to forbid under severe penalties is recognized, I think, by the Codes of every State in the Union, if not, indeed, by those of all civilized communities.

" The right to legislate upon the subjects of intoxicating liquors is acknowledged by every one, and is founded upon the fact that their use in excessive quantities leads, in large masses of cases, to crime, poverty, and enormous suffering, and bears most harmfully upon the sum of happiness of the human race. So in regard to lotteries in general. A widespread custom of indulgence in the purchase of tickets leads, among the poorer classes certainly, and also among others, to habits of recklessness, waste, and idleness. It cultivates a gambling spirit and tends to a hatred of honest labor, and to a desire to obtain riches or money without the necessary expenditure of industrious energy." *People* v. *Gillson*, 109 N. Y. 404.

The act in question would seem, then, to be in the performance of the obligation which rests upon the General Assembly of Virginia to pass laws to suppress a recognized vice. There is no question that the police power must be exercised in subordination to the Constitution of the State, and *a fortiori* that it must not be in contravention of the Constitution of the United States. Now, as the proper discharge of the functions and duties entrusted to the National and State governments is necessary to the highest efficiency of both, it follows that in the development and growth of the two systems thus blended and interwoven and operating directly, each by its own force, upon the same individuals, wisdom and prudence must prevail in order that the happiest and best results may be achieved.

In the case before us, there would seem to be no reason why any antagonism or conflict should result from the exercise within their appointed limits of the power on the part of Congress to regulate commerce among the States, and the duty of the State to suppress a recognized offence against

good morals.   There can be none unless the transmission of money or other thing of value to be bet on a race to take place beyond the limits of the State be a subject of commerce which is entitled to shelter itself under the *ægis* of the Constitution of the United States, and invoke for its protection the power to regulate commerce with which Congress was clothed to the end that legitimate intercourse between the States might forever remain free and unfettered.

In *Cohens* v. *Virginia,* 6 Wheaton, 264, 443 (a case, by the way, in which a lottery established by the Congress of the United States sought to set at naught a law of the State of Virginia which forbade the sale of lottery tickets within her borders), it was said by Chief-Justice Marshall: "To interfere with the penal laws of a State, where they are not leveled against the legitimate powers of the Union, but have for their sole object the internal government of the country, is a very serious measure, which Congress cannot be supposed to adopt lightly, or inconsiderately.   The motives for it must be serious and weighty.   It would be taken deliberately, and the intention would be clearly and unequivocally expressed."

The same spirit, happily, still animates the Supreme Court of the United States. It fully recognizes the difficulty oftentimes presented of securing harmonious operation to the just and necessary powers of the Federal and State governments, and with none of the provisions of the Federal Constitution is there more frequent opportunity for interference and conflict than under the commerce clause of the one and the police power of the other.   The great truth must be recognized that the government of our people in its entirety consists of an " indissoluble union of indestructible States," and that as a consequence it is as much the duty of every department of the government of the United States to preserve in their full and unimpaired vigor those powers which, in the distribution of governmental functions, were reserved to the States as to cherish and foster the growth and ex-

pansion to their conditions of highest usefulness those functions and duties which were confided to the Federal Government. Though the power of Congress is held to be exclusive in its nature, and to embrace not only the subjects of commerce, but all the agencies and instrumentalities by which that commerce is to be carried on, we find the Supreme Court readily conceding in a number of instances the free exercise of the police power of the State, though incidentally it might have the effect of interfering with or to some extent regulating interstate commerce. For instances of this sort, see cases cited in *R. & A. R. R. Co.* v. *Patterson Tob. Co.*, 92 Va. 670, and *Com.* v. *Meyers*, 92 Va. 809. In the latter case, it is said "that the right of the State to impose a license tax upon peddlers where it operates uniformly upon all citizens, and does not discriminate in favor of citizens of Virginia as against citizens of other States, or where the tax imposed is in the exercise of the police power and is not a regulation of commerce under cover of that power, although incidentally it may have that effect, has been uniformly maintained; but where any injurious discrimination is discovered in favor of the resident as against the non-resident, or with respect to the sales of articles manufactured in this State over similar articles manufactured abroad, the State laws are declared to be void, as repugnant to the Constitution of the United States."

Since that case was decided we have further investigated the authorities on the subject, and are strengthened in the conviction that no decision of the Supreme Court of the United States can be found holding a State law invalid as being repugnant to the commerce clause of the Constitution which was enacted in the *bona fide* exercise of the police power of the State, for the suppression of a recognized vice, or to prevent the sale of adulterated food, or the manufacture of food from impure materials, or to prevent the spread

of disease among men or beasts.    Under cover of the police power efforts are constantly being made to promote some unlawful purpose, as in *People* v. *Gillson,* 109 N. Y. 389, where a law was held unconstitutional which, under the police power, undertook to forbid what was held to be an innocent act, and one which the Legislature could not make criminal.    The Supreme Court has held State laws to be void which impose tonnage duties, *Inman Steamship Co.* v. *Tinker,* 94 U. S. 238, and taxes on imports, as in *Almy* v. *California,* 21 How. 169; and inspection laws discriminating in favor of the citizens of the State as against citizens of other States, *Voight* v. *Wright,* 141 U. S. 62; or which in some of a great variety of modes endeavored to give to its own citizens, or to its own products, an advantage over the citizens or products of other States; and in some instances to favor one industry engaged in by its own citizens over an innocent but less favored occupation.    An example of the latter is to be found in the case of the *People* v. *Marx,* 99 N. Y. 377.    Not unfrequently it happens that the police power is resorted to merely for purposes of revenue.    In these and like cases, which might be greatly multiplied, the courts have held that they did not come properly within its domain.

While a State law which operates as a regulation of interstate commerce, or which affects it, except incidentally, could not be upheld under the police power of the State; while laws pretending or purporting to be in the exercise of the police power, but which are but devices and schemes under cover of that power to accomplish some purpose forbidden to the State, are void; yet State laws passed with the honest purpose of promoting the health, the morals, or the well-being of its citizens, are valid.

Contracts are peculiarly under the protection of the Constitution of the United State, which declares that no State shall pass a law impairing their obligation; and yet it is not

pretended that a State may not prohibit the enforcement of contracts resting upon a vicious or immoral consideration, the enforcement of which would have a vicious and immoral influence. So, too, we think that to call into activity the inhibition upon the States to interfere with interstate commerce implied from the grant to Congress of the exclusive power to regulate it, the first thing to be shown is some subject of commerce which commends itself as at least not injurious to health and morals. In no case can the just and proper exercise of the police power of the State, acting with the honest purpose to protect the health and morals of a community, conflict with the proper exercise of the power in Congress to regulate commerce unless the means of disseminating disease and encouraging vice are proper subjects of commerce.

It is insisted here, however, that inasmuch as the offence consists in forwarding a sum of money by telegraph to Wheeling, W. Va., to be wagered on a trial of speed of horses to take place at St. Louis, Mo., it not being unlawful, as it is claimed, to make such a wager in West Virginia, the act making it criminal is void, not only as being repugnant to the commerce clause of the Constitution, but as an attempt to punish the doing in West Virginia of an act lawful in that State.

We have said enough to show that there is, in our opinion, no repugnancy in the statute to the commerce clause of the Constitution. Upon the other point we might content ourselves with observing that as we are not trying the issue of guilty or not guilty, but only whether there is lawful cause for the detention of petitioner disclosed by the warrant and commitment, the effect of the proof of the law of West Virginia, as of all other facts, must be postponed till the trial; but as an expression of opinion has been sought, and there can be no impropriety in giving it, we are willing to go somewhat into this branch of the subject also.

We do not perceive that the fact that the race upon which the wager is to be made is to be run in Missouri, and that the money is to be placed in West Virginia, at all affects the question. It remains that by the statue the act is made unlawful here, and may be punished unless it be under the protection of the Constitution of the United States. With the laws of our sister States we have no concern except in so far as they appear in this record, and they are not the proper subjects of animadversion or criticism. If West Virginia has not legislated against this form of gambling, it is no concern of ours. Virginia has a right to repress and punish that which by the common consent of mankind is a vice, without regard to the laws of other States. To make a bet or wager upon a race to take place in Missouri is as injurious to good morals as though it were to take place within our own borders; nor is the quality or character of the act at all affected by the fact that a stage in the transaction takes place upon the neutral ground of West Virginia. The root of the evil is here, and here its baneful influence and example are felt. The act at which the punishment is aimed takes place in Virginia, and over it and the actors in it Virginia has complete jurisdiction unless, as has been so often said, shelter and protection are found under the commerce clause of the Constitution of the United States.

Another objection taken to the warrant is that it is too vague and indefinite; that it is the right of a person accused of crime to be informed of the "cause and nature of the accusation against him."

Warrants of arrest are required to recite the offence charged, but the same particularity is not expected or required as in indictments or more formal papers. See 3 Rob. Pr., p. 10 (old ed.); Bishop on Crim. Proc. sec. 714.

While we think it would be better practice to state the offence more specifically than has been done here, we are not prepared to say that we would on that account alone be

content to quash the proceedings, and to discharge the prisoner.

The remaining ground of objection, however, is fatal to the warrant of commitment under which the prisoner is held. By section 4106 of the Code, as amended by an act approved March 5, 1896 (Acts 1895–96, ch. 845, p. 924), justices of the peace are given "exclusive original jurisdiction of all misdemeanors occurring within their jurisdiction," and are authorized to inflict the same punishments theretofore imposed by county and corporation courts. By section 4107 an unrestricted right of appeal to the county or corporation court is secured, where the accused can demand a jury, but the trial and judgment must in the first instance be before the justice. The effect of this statute is to take away from county and corporation courts the power to try misdemeanors as courts of original jurisdiction. It takes away their power to try misdemeanors even in those cases where indictments or informations were pending. See *Dulin* v. *Lillard, Sheriff,* 91 Va. 718, where the effect of a similar statute is fully discussed and considered and the authorities bearing upon it are collated.

For the foregoing reasons we are of opinion, first, that on account of the insufficiency of the title of the act set out in the warrant, pool-selling is the only form of bet or wager that is made punishable thereby; secondly, that there is no repeal by implication of either of the two acts passed February 29, 1896, but that the act entitled "An act to prevent pool-selling, &c., upon the results of any trials of speed of any animals or beasts taking place without the limits of the Commonwealth" (Acts 1895–96, ch. 539, p. 576), is effective only as to pool-selling; while the act entitled "An act to prevent gambling and selling or making books, pools or mutuals within the Commonwealth of Virginia" (Acts 1895–96, ch. 545, p. 579), is in all respects in full force and vigor; thirdly, that neither act is repugnant to the Consti-

tution of the United States; fourth, that it would be better practice to state the offence with more precision than has been here observed, especially, in view of the fact that justices are now clothed with exclusive original jurisdiction to try misdemeanors and the warrant gives to the accused the only information as to the nature of the offence with which he is charged; and, lastly, that the warrant of commitment under which the petitioner is held in custody is void, because it was the duty of the justice to try the case, instead of committing the prisoner for trial by the County Court, which is without authority as a court of original jurisdiction as to misdemeanors.

The prisoner must be discharged.

*Prisoner discharged.*