# Richmond.

COMMONWEALTH EX REL. CITY OF RICHMOND v. CHESAPEAKE
AND OHIO RAILWAY CO. AND OTHERS.

SAME v. VIRGINIA RAILWAY AND POWER CO. AND OTHERS.

January 13, 1916.

Absent, Cardwell, J.

1. STATUTES—*Titles*—"*Object*"—"*Subject*"—*Constitutional Law.*—The word "object" as used in the constitutional provision that "no law shall embrace more than one object, which shall be expressed in its title" and the word "subject" when used in similar constitutional provisions, have the same purpose in view and mean substantially the same thing, and that purpose is well understood in either case.

2. STATUTES—*Title of Act*—*Sufficiency*—*Constitutional Law.*—The title of an act will be sufficient, within the constitutional requirement that the object of a statute shall be expressed in its title, if the things authorized to be done, though of a diverse nature, may be fairly regarded as in furtherance of the object expressed in the title. If the subjects embraced by the statute, but not specified in the title, have congruity or natural connection with the subject stated in the title, or are cognate or germane thereto, the requirement of the constitution as to the title is satisfied. The constitution is to be liberally construed so as to uphold the law, if practicable.

3. EVIDENCE—*Judicial Notice*—*Tax on Rolling Stock.*—The insistence for years, by the public or a large part thereof, before the legislature, in the courts and in the newspapers that the situs for taxation of the rolling stock of railroads should be changed so as to permit local taxation thereof by the cities and counties through which the road passes is a matter of common knowledge of which the courts will take judicial notice.

4. STATUTES—*Title of Act*—*Sufficiency*—*Notice.*—The title of an act "An act in relation to the assessment, for local taxation, of the rolling stock of railroad corporations" gives sufficient notice to all interested of its object. The subject plainly expressed is the assessment of the rolling stock, and the object equally well indicated is that local taxes may be levied thereon. The assessment of property for taxation necessarily involves its situs.

5. Statutes—*Title of Act—Sufficiency—Surplusage.*—If it be admitted that the title of the act for "the assessment, for local taxation, of the rolling stock of railroad corporations" (Acts 1914, p. 218) is not broad enough to cover that part of the act authorizing the local authorities to levy the taxes, then that part of the statute may be treated as surplusage, without rendering void other parts of the statute which are fairly included within its title, and the taxes may be levied under other statutes.

6. Constitutional Law—*Statutes—How Doubts Solved.*—If there is a fair doubt that the single subject, object and purpose of a statute is sufficiently expressed in its title to conform fully with the constitutional requirement, such doubt should be determined in favor of the validity of the statute.

7. Res Judicata—*Statute Repealed in Part—Railroads—Rolling Stock.*— If a statute relates to the assessment for taxation of the rolling stock of both steam railroads and electric railways, and it is held to have been repealed by a subsequent statute as to steam railroads, and it is apparent from the record that the court was not considering the act except so far as it affected the rolling stock of steam railroads and that no other question was before it, such decision leaves the statute unaffected as to the rolling stock of electric railways.

8. Statutes—*Amendment—Construction—Former Statute Repealed.*—If an amending act, fairly construed, is a complete statute in itself, and, by the ordinary rules of construction, its meaning can be ascertained, it will be upheld as the latest expression of the legislative will, although the act amended has been repealed.

9. Statutes—*Amendment—Former Statute Unconstitutional.*—An unconstitutional statute may be amended so as to render it constitutional, so far as its future operation is concerned, by an act removing its objectionable provisions, or by supplying others to conform it to the constitutional requirements.

10. Taxation—*Railroads—Rolling Stock—Situs—Legislative Power.*—By the common law the location of the rolling stock of a railroad company was fixed at the principal office of the company, but the legislature has full power to change such location, and the distribution of it among the various cities, towns, counties and districts through which the road passes is not in violation of section 128 of the constitution.

11. Taxation—*Railroads—Rolling Stock—Acts 1914, page 218—Constitution, Sections 64 and 188.*—The act apportioning the tax on the rolling stock of railroad companies among the various cities, towns, counties and districts through which the road passes (Acts 1914,

p. 218) does not surrender or suspend the right of any city to tax corporations or corporate property, and does not conflict with sections 64 and 183 of the constitution.

12. TAXATION — *Street Railways — Rolling Stock — Situs — Legislative Power.*—The *bona fide* situs of the cars of an electric and street railway company which owns tracks and operates its cars at pleasure through adjacent counties, cities and towns cannot be said to be in the city in which its principal office is located, and it is entirely competent for the legislature to apportion the tax on its rolling stock among the counties, cities and towns through which it operates its road.

13. TAXATION—*Power of Legislature—Street Railways—Rolling Stock—Situs—Contract Between City and Railway.*—The right of taxation is a continuing governmental power lodged with the legislature, and no contract between a city and a street railway company can control the legislature in determining questions of general law applicable to the whole State, nor affect the right given by the legislature to other cities and counties, through which the railway company operates lines, to levy taxes on the rolling stock of said company operated on said lines. Such contracts made by a city are subordinate to the will of the legislature and subject to nullification by it at any time.

14. TAXATION—*Situs of Personal Property—Rolling Stock of Railroads—Situs Fixed by Statute--U. S. Constitution, Amendment XIV.*—Usually the situs of personal property follows the domicile of its owner, but this rule is subject to legislative change at pleasure, and if the rule applies at all to the rolling stock of a railroad company, still the mode of distribution of such unlocated and transitory personal property is a matter of regulation by the State legislature which in no way involves a violation of the fourteenth amendment of the constitution of the United States.

Appeal from the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*H. R. Pollard, George Wayne Anderson* and *George Mason,* for the appellant.

*E. P. Buford, Randolph Harrison, Martin Williams, A. H. Light, J. O. Shepperd* and *Henry W. Anderson,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

These appeals are from orders of the State Corporation Commission, in the matter of taxation of the rolling stock of railroad corporations, sustaining the demurrers of appellees to petitions filed by appellant, and dismissing the same.

The railway companies are not resisting the orders of the State Corporation Commission, and have paid into court the one year's tax which is the subject of controversy, to be distributed among the several counties, cities, towns, etc., in accordance with the apportionment made by the commission, in the event this court shall affirm its decision.

Judge Robert R. Prentis, chairman of the commission, in an exhaustive opinion, has discussed all questions raised by the petitions for appeals with convincing ability. This court, upon mature consideration of the matters brought under review, concurs in the conclusions reached by the commission, and it is our unanimous judgment to adopt the able opinion of the chairman as the opinion of this court, and for the reasons therein set forth to affirm the orders appealed from.

The opinion is as follows:

"A majority of this commission declared the rolling stock act of 1912 unconstitutional (State Corporation Commission Report, 1913, 78), and the Supreme Court of Appeals, on appeal from that decision, declared that it was repealed by the act of March 13, 1912 (*Supervisors of Henrico County and Others* v. *City of Petersburg,* 116 Va. 311, 81 S. E. 112). The General Assembly at its 1914 session (Acts 1914, p. 218), and before the decision of the court was announced, in response to an overwhelming public sentiment, and in the pursuit of its fixed purpose to change the method of assessing the rolling stock of railroads for local taxation, passed an act which reads as follows:

" 'Chapter 135.—An act to amend and re-enact an act

entitled an act in relation to the assessment, for local taxation, of the rolling stock of railroad corporations, approved March 12, 1912.   (H. B. 88.)

" 'Became a law without the governor's approval March 18, 1914.

" '1.   Be it enacted by the General Assembly of Virginia, That an act entitled an act in relation to the assessment, for local taxation, of the rolling stock of railroad corporations, approved March twelfth, nineteen hundred and twelve, be amended and re-enacted so as to read as follows:

" 'The rolling stock of the various steam, electric and street railroad corporations doing business in Virginia (whether operated by steam or other motive power), so far as the same is taxable in this State, shall not be assessed for local taxation at the principal office of said corporation, but the value of said rolling stock, as ascertained and assessed by the State Corporation Commission for the purpose of State taxation, shall be divided, apportioned and distributed (for the purpose of local taxation) among the several counties, cities, towns and school districts in this State, in and through which any part of any such railroad is located, in the ratio and proportion that the total assessed value of the right of way, roadbed, track and all other property (except rolling stock) of such railroad corporations, respectively, located in any such county, city, town or school district, bears to the assessed value of all such property (except rolling stock) of said railroad corporations, respectively; provided, that foreign railroad corporations doing business in this State shall be assessed for taxation on the average amount of rolling stock habitually used by them in this State.

" 'The State Corporation Commission shall annually, on or before the fifteenth day of October, in each year, divide, apportion and distribute, according to the ratio and proportion, aforesaid, the assesesd value of rolling stock of said railroad corporations, respectively, among the several counties, cities, towns and school districts in and through which the line, or

roadway of any such railroad corporation is located, and certify to the board of supervisors of said counties, and to the councils of said cities and towns, respectively, the proportion of the assessed value of said rolling stock for local taxation by said counties, cities and towns and school districts, respectively, and the proportion of the assessed value of said rolling stock which shall be subject to taxation for local purposes by the counties, cities, towns and school districts, as aforesaid, shall be that part of said assessed value of said rolling stock certified by the State Corporation Commission to the respective boards of supervisors of the counties, and the councils of the cities and towns, as hereinbefore provided.

" 'The said valuation of said rolling stock, when so ascertained and certified and apportioned, as aforesaid, shall be held to be situated for the purpose of local taxation in said cities, towns, counties and districts and taxable therein in the same way and manner as the physical properties of said railroad is taxed for the purpose of local taxation, as now provided by law, and said apportionment shall be treated in all respects, for the purpose of local taxation, as if said rolling stock was actually situated in said cities, towns, counties or districts, and the *situs,* or place of taxation of such rolling stock, to the extent of said valuation and apportionment, shall be in the said cities, towns, counties and districts aforesaid and not elsewhere, and shall be taxed in all respects as other property is taxed for local purposes in such cities, towns, counties and districts through which said railroad passes, in whole or in part, and the councils of such cities and towns and the boards of supervisors of the several counties in the State in which the said railroads are situated as aforesaid, shall be, and they are, hereby authorized to levy upon the value of said rolling stock, so ascertained and certified as aforesaid to said cities, towns, counties and districts by the State Corporation Commission aforesaid, the same rate of local levies and taxation as is put and placed on the physical properties of such railroads situated in said cities, towns, counties and districts for local purposes.

" 'And the several railroad corporations shall pay over to the treasurers of the respective counties, and to the treasurers of the respective cities and towns, the taxes to which they shall be, respectively, entitled under such assessment, at the same time and in the same manner as taxes levied on the other properties of such corporations for local purposes, are required to be paid.

" 'All acts and parts of acts in conflict herewith are hereby repealed.

" 'This act shall be in force from and after the twenty-fifth day of June, nineteen hundred and fourteen.'

"By authority of this act the Commission in 1914 assessed and distributed the value of the rolling stock, and certified such assessments to the various local authorities as thereby directed.

"After this was completely done the act was attacked by the city of Richmond and the city of Petersburg before this commission in these proceedings.

"First. It is claimed that the title is defective in that it violates section 52 of Article IV of the Constitution of Virginia, prescribing that 'no law shall embrace more than one object, which shall be expressed in its title.' It is said that this statute does not state its object, that while the subject is stated that the object is not. Some authority is cited for making this distinction. We believe, however, that these authorities are not supported by reason, are unsound and are not controlling, and that the great weight of authority supports the proposition that, as used in this constitutional provision, the words 'subject' and 'object' should be construed as having the same purpose in view and mean substantially the same thing. Cooley's Constitutional Limitations, 170.

"The purpose of the constitutional inhibition is well understood. In *Commonwealth* v. *Willcox,* 111 Va. 856, 69 S. E. 1030, the doctrine is thus restated by Keith, president: 'The construction of the constitutional provision, that no law shall embrace more than one object which shall be expressed in its title, was before this court in the case of *Commonwealth* v.

*Brown,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110. The unanimous opinion of the court was written by Judge Riely, and the conclusion reached was that the title of an act will be sufficient, within the meaning of the Constitution, if the things authorized to be done, though of a diverse nature, may be fairly regarded as in furtherance of the object expressed in the title. All that is required is that the subjects embraced in the statute, but not specified in the title, be congruous and have natural connection with or be germane to the subject expressed in the title. And the Constitution is to be liberally construed so as to uphold the law, if practicable. It was claimed in that case that the body of the statute embraced many objects instead of one; that it amended and repealed many sections of the Code; that the independent sections had various objects, and that the title should have stated and shown what subject each section as amended and re-enacted had reference to, what subject each section repealed had reference to, and that the subject matter in the independent sections should have been clearly set forth in the title. Judge Riely, in his opinion, says: "The provision of the Constitution is a wise and wholesome one. The purpose is apparent. It was to prevent the members of the legislature and the people from being misled by the title of a law. It was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the practice of bringing together into one bill for corrupt purposes subjects diverse and dissimilar in their nature and having no necessary connection with each other, and to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation. On the other hand, it was not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law upon one general subject. It was not designed to embarrass legislation by compelling the multiplication of laws by the passage of separate acts on a single subject. Although the act or statute authorizes many things of a diverse nature to

be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title."

" 'In *Ingles* v. *Straus,* 91 Va. 209, 21 S. E. 490, Judge Cardwell, speaking for the court, maintains the identical principle, that "if the subjects embraced by the statute, but not specified in the title, have congruity or natural connection with the subject stated in the title, or are cognate or germane thereto, the requirement of the Constitution as to the title is satisfied;" and quotes with approval the case of *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382, where it is said that "all that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical. It is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected."

" 'The fact that the act authorizes many things of a diverse nature to be done will not affect the sufficiency of the title, provided the doing of such things may be fairly regarded as in furtherance of the general subject of the enactment." *Ingles* v. *Straus, supra.* See, also, *Lacey* v. *Palmer, supra* (93 Va. 159, 24 S. E. 930, 31 L. R. A. 822, 57 Am. St. Rep. 795) to the same effect.

" 'The case of *Commonwealth* v. *Brown, supra,* was the subject of annotation and criticism by that eminent jurist, Judge Burks, in 1 Va. Law Reg. at p. 118, where the conclusion reached was warmly commended, and that line of decisions has been approved by time, the most just, as well as the most severe, of all critics.'

"It is well settled that while the provision is mandatory, it should be construed liberally, and not so as to defeat legislation by verbal refinements upon doubtful questions.

"The effort to distinguish between the words 'subject' and 'object,' as used in similar constitutional provisions, was evidently under consideration by the Supreme Court of Appeals of Virginia in the case of *Ingles* v. *Straus,* 91 Va. 215, 21 S. E. 492, and Cardwell, judge, disposes of it in this language: 'A similar provision to this is found in the Constitutions of most of the States of the Union, and has been construed in a large number of cases, and by many courts of last resort, both State and Federal, and the authorities that will be cited here will be the cases arising in those States having a similar constitutional provision—the words "object" and "subject" being taken to have one and the same signification.'

"Again, in *Conk* v. *Skeen,* 109 Va. 11, 63 S. E. 13, Judge Cardwell says this: 'Section 52 of the present Constitution is identical with section 15 of the former Constitution, and in the case of *Ingles* v. *Straus,* 91 Va. 209 (21 S. E. 490), practically the same question here presented was considered and determined. It was there held that if the subjects embraced in the act, but not specified in the title, have congruity or natural connection with the subject stated in the title, or are cognate or germane thereto, the requirement of the Constitution, that "no law shall embrace more than one *subject,* which shall be expressed in its title," is satisfied.'

"The authorities could be multiplied almost indefinitely establishing the same general doctrine.

"We believe that inasmuch as it is undisputed that the subject of this legislation is plainly indicated in its title, these two cases are decisive of the question here raised.

"Whether the word 'subject' is used or the word 'object,' the underlying purpose is the same, and the commonly accepted meaning of the words should control the courts.

"That our own court uses the words interchangeably as having the same meaning is apparent from the most casual examination of the decisions.

"The plainly indicated purpose of the act here involved is to change the law with reference to the assessment of the rolling stock of railroad corporations for taxation, otherwise why enact any law? Courts, as well as everybody else, take notice of matters of common knowledge, and it is certainly a matter of common knowledge in Virginia that for many years, before the legislature, in the courts and in the newspapers, there have been discussions of the proposition to change the *situs* of the rolling stock of railroads for taxation, and a recognition of the public demand to change the common law *situs* of rolling stock for taxation. Bearing this in mind it seems to us that there can be no doubt that the title of this act gives sufficient notice to all interested of its object, namely, to enact a statute changing the existing common-law rule. The title states it to be a law relating to the assessment, for local taxation, of the rolling stock of railroad corporations. The subject of it, therefore, as plainly expressed, is the assessment of the rolling stock, and the object, equally well indicated, is that local taxes may be levied thereon. The assessment of property for taxation necessarily involves its *situs*. There is a single object, that is, the securing of local taxes, and as a preliminary to the attainment of that object there must be an assessment, and a necessary incident to assessment is the fixing of the *situs*. All of these things are fairly included in the general language of the title, and are aptly expressed by the words of the statute. The statute does not levy

any local or other taxes. That part of the statute which authorizes the local authorities to levy taxes upon the value of the rolling stock so ascertained and certified to them puts emphasis upon the purpose and object of the statute. It does not change any existing law. It does not amend section 833 of the Code, which is the section authorizing the boards of supervisors to levy local taxes upon property within the county. The *situs* of the rolling stock, by the act having been fixed in the various counties, cities, towns and districts, the local authorities were by other laws already authorized to levy and collect taxes thereon. If it be admitted that the title is not broad enough to cover this part of the statute, then it may be treated as surplusage, and does no make void such part of the statute as is fairly included within the title.

"This act, by providing for the assessment and location of the property, makes possible its ultimate object, that is, the levying and collection of local taxes from the owners of the property. To have changed the *situs* without providing for an assessment at such *situs* would have been vain, and to have provided for the assessment without fixing the *situs* would have left the common-law rule in effect. Had the title merely referred to the changing of the *situs* it would have been suggested that it was too narrow to include its assessment, but by referring to its assessment for local taxation it necessarily included the fixing of its *situs,* for the *situs* of personal property must be fixed in the. locality as the basis for taxation by the authorities of that locality.

"That these petitioners must have thought the title of this act sufficient when the proceeding was instituted is plainly indicated by the fact that this ground of invalidity was not alleged in the original petitions, and was only introduced by amendments to the petitions made at the time the proceeding was heard.

"If there be a fair doubt that the single subject, object and purpose of the statute is sufficiently expressed in the title to

conform fully with the constitutional requirement, it is well settled that such doubt should be determined in favor of the statute. We have, however, no doubt whatever of the sufficiency of the title.

"Second. The second ground of attack is that, inasmuch as the Court of Appeals has declared that the act of 1912 has been repealed by the act approved March 13, 1912, therefore, that there was no law in existence which could be amended.

"It will be noted that in the decision of this commission hereinbefore referred to, it was stated that nothing said in that opinion should be construed as questioning the constitutionality of the act of 1912 so far as it referred to the rolling stock of electric railways, and that the part of the act referring to the change of *situs* for taxation of the rolling stock of electric railways had not been questioned. The fact is that this part of the act was executed by the commission, and the rolling stock of electric railways was assessed for taxation under the act of March 12, 1912, and the tax paid thereon. So that, while the opinion of the Court of Appeals, in general terms, states that the act of March 12, 1912, had been repealed, at the same time it is perfectly apparent from the record that they were not considering the act except so far as it referred to the rolling stock of the steam railroads, because no other question was before them, and hence the court has not decided that the act of 1912 had been repealed so far as it changed the *situs* for taxation of the rolling stock of certain electric railways. Therefore, under the strictest application of the doctrine, the act could be amended.

"We do not, however, think that the validity of the act of 1914, now under consideration, depends upon this fact. While certain authorities appear to sustain the proposition that an act which has been repealed cannot be amended, these authorities are against the decided weight of authority, and in our opinion are unsustained by reason.

"The reference in the title of the act now in consideration to the former act may be treated as surplusage, and the act of

1914 as the latest expression of the legislative will, and if constitutional and complete in its terms it is the duty of the courts to give effect to the legislative will thus expressed. The case of *Whitlock* v. *Hawkins,* 105 Va. 242 (53 S. E. 401), is instructive, if not conclusive on this point. There had been published in the official edition of the Acts of 1902-3-4 an act which it appeared upon investigation had never been passed by the General Assembly in the mode prescribed by the Constitution. The act was therefore declared to be a nullity. At the session of 1906 the General Assembly undertook to cure this null and void act by passing an act with this title: 'An act to amend and re-enact chapter 23 of the Acts of Virginia in relation to assessments of lands and lots as the same was amended by chapter 388 of the Acts of Assembly of 1902-3-4 approved December 10, 1903, and to validate assessments and other acts done under the aforesaid act of the Assembly.'

"Apparently the question here raised was not raised in that case, but the court decided the later act fully effective, though it was an act to amend and re-enact an act which had never been passed.

"While there may be cases in which the amending act undertakes to amend a single section of an act having many sections and which had been repealed, which makes it impossible to correlate or co-ordinate the amending act with any existing law, and thus the amending act must be pronounced void, still the underlying and true reason for this is not because it amends an act which had been repealed, but because the later act is meaningless. We believe that doctrine to be utterly unsound if the amending act, fairly construed, is a complete statute in itself which the legislature sees fit to re-enact. If, by the ordinary rules of construction, the meaning of the later act can be ascertained, it is and should be effective as the latest expression of the legislative will. *People* v. *Onahan,* 170 Ill. 449, 48 N. E. 1007; *People* v. *Board, etc.,* 143 N. Y. 84, 37 N. E. 650; 36 Cyc. 1055.

"Third. Closely related to the objection just considered is the allegation that the act of 1912 was unconstitutional, and being unconstitutional could not be amended. Upon the threshold of this proposition it may be asked what more natural method of curing the defects of an unconstitutional law can be suggested than that the legislature should amend and re-enact it so as to remove the objection ?

"In the case of *Allison* v. *Corker,* 67 N. J. 596, 60 L. R. A. 564, 52 Atl. 362, this question was presented, and Collins, J., answered it thus: 'It is argued that as the original statutes were void, they could not be amended. For the purpose of this case it may be conceded that the unconstitutional provisions referred to were inseparable from the legislative intent, so that in each case the entire statute was unconstitutional. The question raised is, therefore, fairly presented. The argument is that an unconstitutional statute is a nullity. Granting this, it does not follow that it may not be imported into valid legislation by appropriate reference. It is entirely within the legislative power to give effect to documents without their full recital. The matter is purely one of identification. Surely nothing can be more definite than a reference to a document that has been regularly promulgated as a public statute. In *Mortland* v. *Christian,* 52 N. J. L. 521 (20 Atl. 673), it was held by this court that a statute providing for election of chosen freeholders of a county from assembly districts created under previous legislation was valid, whether such districts could be constitutionally created or not. But I am prepared to go further and hold that an unconstitutional statute is nevertheless a statute, that is, a legislative act. Such a statute is commonly spoken of as void. I should prefer to call it unenforceable because in conflict with a paramount law. If properly to be called void, it is only so with reference to claims based upon it . . . The Supreme Court can not set aside a statute as it can a municipal ordinance. It simply ignores statutes deemed unconstitutional. An unconstitutional statute is not merely blank paper. The solemn

act of the legislature is a fact to be reckoned with. · Nowhere has power been vested to expunge or remove it from its proper place among statutes.'

"In the case of *State* v. *City of Cincinnati,* 52 Ohio St. 419, 40 N. E. 511, 27 L. R. A. 737, the validity of an amending or curative statute was questioned, because the original act was unconstitutional, and it could not, therefore, be made valid by amendment, though the constitutional objection be thereby removed. The conclusion reached by the court, however, was that an unconstitutional statute may be amended into a constitutional one, so far as its future operation is concerned, by removing its objectionable provisions or supplying others to conform it to the requirements of the Constitution.

"In *Columbia Wire Co.* v. *Boyce,* 44 C. C. A. 588, 104 Fed. 172, it is said by Woods, J.: 'In the absence of constitutional restriction the reasonable rule would seem to be, as it has been several times declared, that an amendatory statute will be upheld, though it purport to amend a statute which had already been amended or which was for any reason invalid,' citing *Com.* v. *Kennenson,* 143 Mass. 418; 9 N. E. 761; *Jones* v. *Commissioners,* 21 Mich. 236; *State* v. *Brewster,* 39 Ohio St. 653; *Basnett* v. *Jacksonville,* 19 Fla. 664; *Greet* v. *State,* 22 Texas 588; *State* v. *Warford,* 54 Ala. 15, 3 South. 911; · *Blake* v. *Brackett,* 47 Me. 28.

"We conclude, therefore, that if the act of 1912 is unconstitutional, the General Assembly has taken the natural and proper way to remove the objection.

"Fourth. It is alleged that the act of March 18, 1914, is a violation of section 128 of the Constitution, which reads as follows:

" 'Sec. 128. · In cities and towns the assessment of real estate and personal property for the purpose of municipal taxation shall be the same as the assessment thereof for the purpose of State taxation, whenever there shall be a State assessment of such property,' and is, therefore, null and void.

"This objection appears to be based upon the assumption that the rolling stock is located for State taxation at the principal office of the company by virtue of section 27 of the tax bill. This assumption, however, appears to us to be utterly unsound. While section 27 of the tax bill requires the company to report the location of its real and personal property, it nowhere fixes the location of the rolling stock. By the common law the location of the rolling stock was fixed at the principal office of the company, but it cannot be seriously contended that the General Assembly may not change the location of such movable property as rolling stock. All that section 128 of the Constitution does is to require that personal property located in such municipality shall be assessed for the purpose of municipal taxation at the same value as it is assessed for the purpose of State taxation, and this statute does not violate that section of the Constitution because the General Assembly by the act of March 18, 1914, has located a part only of the rolling stock here involved in the city of Richmond. The assessment of such part thereof as is located in that city is the same for the purpose of State taxation as it is for the purpose of municipal taxation, and we find no warrant for the assumption upon which this objection is based, namely, that the location of any more of this property for State taxation is in the city of Richmond. We are of opinion that the location of the property for State taxation is in the various counties, cities, towns and districts through which the lines of the railroad companies run, and that the *situs* for purposes of all taxation, State and local, is fixed by the last act referred to. Indeed, the act itself states that 'the *situs,* or place of taxation of such rolling stock, to the extent of such valuation and apportionment, shall be in the said cities, towns, counties and districts aforesaid and not elsewhere.'

"Fifth. It is also alleged that the act of March 18, 1914, violates both the second paragraph of section 64 and section 183 of the Constitution. The portion of the second paragraph of section 64 relied upon reads as follows: 'No general or special

law shall surrender or suspend the right and power of the State, or any political subdivision thereof, to tax corporations and corporate property, except as authorized by article 13.' And section 183 designates the property which shall be exempt from taxation, State and local.

"It is said that the act of March 18, 1914, is unconstitutional in that it surrenders and suspends the rights and power of the cities of Richmond and Petersburg to tax corporations and corporate property in a manner not authorized by article 13 of the Constitution, and, in effect, exempts from local taxation by the municipalities the greater part of the personal property belonging to the railroad corporations. We cannot accept the soundness of this suggestion. There is nothing in the rolling-stock act of 1914 which can be construed as surrendering or suspending the powers of any municipality to tax corporations or corporate property. On the contrary it expressly reserves to every municipality the right to tax corporate property, that is, such portion of the rolling stock of the railroads as is by the act located within such municipality. To admit the proposition is to admit that the legislature has not the right to change the *situs* of this class of property for local taxation. This proposition is not only not admitted, but is denied. It will be noted that under article 13, section 18, after January 1, 1913, the legislature is given express authority to change the system of taxing railroad corporations, which, of course, includes the method of taxing the rolling stock of railroad corporations.

"Sixth. It is alleged that the rolling stock of electric and street railroad corporations has an actual *bona fide situs* in the city in which their principal offices are located. As to this it may be said that if the entire track of such electric railways is within the corporate limits of the city, then the *situs* of all the rolling stock of such a railroad remains within such city. The act does not affect the powers of the city to tax the rolling stock of such companies. If, however, the lines of such railways run into and through the adjacent counties and into other cities and towns, then there is a conclusive presumption that it

operates its rolling stock into and through such other counties, cities and towns. This being a concession, it follows that the rolling stock of such company has no actual *bona fide situs* in the city in which its principal office happens to be located, but is used at its pleasure over its lines in and out of these cities, and because such rolling stock has no actual *bona fide situs,* but may be, and is, actually used outside of the city, therefore, the legislature may fix such *situs* for the purpose of taxation.

"In the case at bar, under the statute now being considered, the legislature has apportioned the rolling stock, and under that apportionment if the city in which is the principal office has also located in it a large proportion of the lines and other property of the company, then a large proportion of the rolling stock is by the act located for taxation within such city.

"That this apportionment of the unlocated property of the Virginia Railway and Power Company is not inequitable, so far as it affects the city of Richmond's right to tax its rolling stock, is indicated by the assessment and apportionment made by this commission under the act of March 18, 1914. The total rolling stock of that company amounts to $802,440.00. The total value of rolling stock apportioned to the city of Richmond, including the small amount to Barton Heights, Ginter Park and Highland Park—now part of the city—amounts to fifty-two *plus per cent.,* or $418,552.00. This company operates in the cities of Richmond, Norfolk, Petersburg and Portsmouth, and in the counties of Chesterfield, Henrico, Dinwiddie, Prince George and Norfolk, a total mileage of 138 *plus.* Of this mileage only about forty-one and one-half miles is in the city of Richmond, and yet, while it has less than thirty *per cent.* of the mileage of the road, it receives under this apportionment over fifty *per cent.* of the assessed value of its rolling stock for local taxation.

"Until we are prepared to deny the legislature the right to give this class of property a legal *situs* for taxation we cannot accept the soundness of the proposition contended for.

"Seventh. Lastly, it is alleged that the act of March 18, 1914, violates section 10 of article 1 of the Constitution of the United States, prohibiting the impairment of contracts, and to sustain this allegation the petitioner alleges that by an ordinance adopted by the city of Richmond it is provided: 'That for the privilege of using the streets and alleys of the city for the laying therein of their tracks and the erection of poles and stringing of wires thereon, by any of the street railway companies now operating street car lines within the city of Richmond, other than the Richmond Traction Company, each and every such company for such privilege of so using and occupying the streets of the city from and after the first day of January, 1900, shall pay annually to the treasurer of the city . . . the payment of which sums shall be in lieu of any and all license tax, but it is expressly stipulated that such payment shall not affect the liability of the said company or companies to general taxation at the rate assessed on the property of other persons within the city, which liability for general taxation is hereby expressly recognized. The assessment of the property of any such company to be made upon the valuation of its property located in the city of Richmond, as made by the board of public works (now State Corporation Commission) for purposes of State taxation, which valuation, however, shall include all of the rolling stock of such company, whether assessed by the board of public works (now State Corporation Commission) as located in the city or not, which shall likewise be liable to general taxation within the city.'

"Now, if it be possible for a city and a street railway company to so contract with each other as to prevent the legislature of the State from exercising its constitutional powers relating to questions of taxation for the entire State, then this proposition is sound. We cannot, however, admit that the city and the company possess any such restraining power. The right of taxation is a governmental power lodged with the General Assembly, which creates the city, and this power of taxation is a

continuing power. The contract, so far as it undertakes to control the legislature of Virginia in determining questions of general law applicable to the whole State, and so far as it undertakes to control or interfere with the local authorities of other municipalities, and with the boards of supervisors of the counties, in levying taxes upon property legally located within such other cities and counties, is absolutely null and void. What the effect of such contracts may be as between the city of Richmond and the street railway companies entering into such contracts, it is unnecessary for us to discuss. The rights of the' various counties and cities in which this rolling stock is located under the act of March 18, 1914, must be determined by that act, which, so far as it affects such other counties and cities is superior to any such alleged contract. Such contracts made by a city are subordinate to the will of the legislature and subject to nullification by the legislature at any time. *Tippecanoe County* v. *Lucas,* 93 U. S. 108, 23 L. Ed. 824; *Mount Pleasant* v. *Beckwith,* 100 U. S. 525, 25 L. Ed. 701; *New Orleans* v. *New Orleans Waterworks Co.,* 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943.

"Eighth. The true determination of the questions here involved depends upon whether the State has the right to change the common law *situs* of rolling stock for taxation. This question is disposed of by the Supreme Court of the United States in the case of *Taylor* v. *Secor,* 92 U. S. 575, 23 L. Ed. 671, by Mr. Justice Miller, in this language: 'Another objection to the system of taxation by the State is that the rolling stock, capital stock and franchise, are personal property, and that this, with all other personal property, has a local *situs* of the principal place of business of the corporation, and can be taxed by no other county, city or town but the one where it is so situated.

" 'This objection is based upon the general rule of law that personal property, as to its *situs,* follows the domicil of its owner. It may be doubted very reasonably whether such a

rule can be applied to a railroad corporation as between the different localities embraced by its line of road. But, after all, the rule is merely the law of the State which recognizes it, and when it is called into operation as to property located in one State and owned by a resident of another, it is a rule of comity in the former State rather than an absolute principle in all cases . . . Like all other laws of a State, it is, therefore, subject to legislative repeal, modification or limitation, and when the legislature of Illinois declared that it should not prevail in assessing personal property of railroad companies for taxation, it simply exercised an ordinary function of legislation.'

"In the case of *Columbus Southern Ry. Co.* v. *Wright*, 151 U. S. 478, 14 Sup. Ct. 399, 38 L. Ed. 242, Mr. Justice Jackson, in dealing with a similar question, says this: 'The question is whether the railroad company has any constitutional right to have its transitory property assessed for taxation alone in Muscogee county, and whether the distribution, among the several counties, of such property is such a discrimination against the railroad as denies to it the equal protection of the laws?

" 'This is hardly an open question. Various modes of taxing railroad property are adopted by the different States. In some, railroad companies are taxed upon their property as a unit. In others, the road and the property in each county is separately assessed, and in still other States the whole road is assessed, and then the assessment apportioned among the several counties and towns. These and all similar modes of taxation are subject to the legislative discretion of the respective States, and do not ordinarily present any Federal question whatever. But the mode of distribution of the unlocated or transitory personal property is a matter of regulation by the State legislature, which in no way involves a violation of the fourteenth Amendment.'

"This doctrine is well established, and many additional authorities could be cited.

"There is nothing in the Virginia Constitution which limits the power of the legislature in this State to fix the *situs* of personal property not having an actual *situs*. The only question is whether the legislature, by the act of March 18, 1914, has exercised its power in a constitutional way. We are clearly of opinion that it has done so, and that the act is and must be made effective.

"We will, therefore, sustain the demurrers to the petition."

*Affirmed.*