## Richmond.

### City of Lynchburg v. Lynchburg Traction and Light Company.

January 16, 1919.

1. Municipal Corporations—*Taxation—Contract.*—A city's right to levy taxes cannot be made to depend upon contract. This power of taxation is a governmental power, which can only be exercised under authority conferred by the General Assembly which creates the city (subject to constitutional limitations), and the statutes under which it is exercised by a city are subject to modification or repeal at the pleasure of the legislature. A contract, which undertakes to control the General Assembly in determining the precise terms of the general laws which should thereafter be applicable to a city, is absolutely null and void. Contracts made by a city with its citizens as to taxation are subject to nullification by the legislature at any time, and taxation by a municipality can in no event be made to depend upon contract, but must rest upon authority granted to the city by the legislature.

2. Municipal Corporations—*Taxation—Compensation For Use of Streets.*—A city cannot enter into a contract in derogation of its governmental power to levy taxes. A tax must be authorized by law, while compensation for the use of streets must be fixed by contract. If a city has made a contract whereby it was to receive compensation for the use of its streets, then there can be no doubt whatever that such a contract would be valid and binding. But it would disarrange our whole system if the right to levy taxes depended upon contract.

3. Municipal Corporations—*Taxation—Contract—Construction of Ordinance.*—Section 177 of the Constitution of 1902 and section 28 of the tax bill of 1916 (Acts 1916, p. 815) deprive a city of the right to levy a license tax on railway corporations, and section 36½ of the tax bill (Acts 1916, p. 803) limits the license tax which may be levied by a city or town upon corporations engaged in the business of furnishing water, heat or light and power, whether by means of electricity or gas, to

½ of 1 % of the gross receipts from such business accruing to said corporation from said business in such city or town.   The Constitution and the statutes, however, both contain a proviso, that nothing contained therein shall annul or interfere with or prevent any· contract or agreement by ordinance between such corporations and municipalities as to compensation for the use of the streets or alleys of such municipalities by such corporations.   An ordinance of the city of Lynchburg ratifying previous contracts with a traction and light company and granting additional rights to the company to operate its lines in the city reserved the right to levy a property tax on the property of the company within the city, and the right after twelve years to levy a license tax on the company.   The city claimed the right under this ordinance to levy a license tax upon the railway business of the company, and a license tax in excess of ½ of 1 % of the lighting business of the company, resting the claim not upon the general statutes authorizing and limiting its right to levy taxes, but upon its power to enter into contracts by ordinance for compensation for the use of its streets and alleys.

*Held:* That the ordinance could not be constructed as such a contract and the ordinances authorizing the license taxes and the assessments under the ordinances were void.

Error to an order of the Corporation Court of city of Lynchburg, on a motion to correct an erroneous assessment. To an order granting the application, the city of Lynchburg assigns error.

*Affirmed.*

The opinion states the case.

*N. C. Manson,* Jr., for the plaintiff in error.

*S. V. Kemp* and *John L. Lee,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The city of Lynchburg, hereinafter called the city, complains of an order of the trial court granting the appli-

cation of the Lynchburg Traction and Light Company, here-inafter called the company, for relief from two alleged erroneous assessments made by the city against the company for the year ending April 30, 1918. The assessments and the ordinances under which they were imposed were held to be void.

Of the two ordinances, the validity of each of which is here involved, one undertakes to impose an annual license tax of $7,000 on each person, partnership or corporation engaged in the business of generating and selling electricity or gas for lighting, power, or heating purposes, as compensation for the use of the streets and alleys of the city by such person, partnership or corporation, while the other imposes a license charge of $8,000 as compensation for the use of the streets and alleys of the city on each person, partnership or corporation engaged in the business of transporting for pay, freight or passengers by electric power. The company claims that these ordinances and license taxes are null and void, because prohibited by section 177 of the Constitution of 1902, and by sections 28 and 36½ of the tax bill of 1916. (Acts 1916, pp. 815, 803.)

[1, 3] Section 177 of the Constitution, and section 28 of the tax bill, both provide that the annual State franchise tax upon gross earnings, required of railway corporations, and the *ad valorem* taxes on their property, shall be in lieu of all taxes or license charges whatsoever; and section 36½ of the tax bill, p. 803, which provides for a State franchise tax upon corporations engaged in the business of furnishing water, heat or light and power, whether by means of electricity or gas, limits the license tax which may be levied by any city or town to one-half of one per cent of the gross receipts from such business accruing to said corporation from said business in such city or town. The Constitution and the statutes, however, both contain a proviso that nothing contained therein shall annul or interfere with or

prevent any contract or agreement by ordinance between such corporations and municipalities as to compensation for the use of the streets or alleys of such municipalities by such corporations.

The counsel for the city admits that the effect of this constitutional provision and these statutes so relied on by the company, is to deprive it of its right to levy a license tax, unless this right is preserved to it by contract. It claims, however, that section 19 of the ordinance of the city, of May 1, 1901, which ratified previous contracts and granted additional rights to the company to operate its lines in the city, constitutes such a contract. That section reads thus: "That the city expressly reserves the right to levy a property tax on all the property to be constructed and owned by the party of the second part, or its assigns, under this contract, within the city limits, at the same rate that other property within the city is taxed; and the said city likewise reserves the right, after the expiration of twelve years from this date, to levy a license tax upon the said company whenever it shall think proper to do so."

The only question then to be determined is, whether or not this section sustains the right to levy the license tax in controversy. It is first to be noted that the language of the section refers to nothing except the right to levy taxes, and it is perfectly well settled that a city's right to levy taxes cannot be made to depend upon contract. This power of taxation is a governmental power, which can only be exercised under authority conferred by the General Assembly which creates the city (subject to constitutional limitations), and the statutes under which it is exercised by a city are subject to modification or repeal at the pleasure of the legislature. The contract, if it undertakes to control the General Assembly in determining the precise terms of the general laws which should thereafter be applicable to the city of Lynchburg, is absolutely null and

void.   Contracts made by a city with its citizens as to taxation are subject to nullification by the legislature at any time, and taxation by a municipality can in no event be made to depend upon contract, but must rest upon authority granted to the city by the legislature. *Commonwealth* v. *C. & O. Railway Co.*, 118 Va. 281, 87 S. E. 622; *Tippecanoe County* v. *Lucas*, 93 U. S. 108, 23 L. Ed. 824; *Mount Pleasant* v. *Beckwith*, 100 U. S. 525, 25 L. Ed. 701; *Meriwether* v. *Garrett*, 102 U. S. 472, 26 L. Ed. 197; *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943; *Augusta* v. *North*, 57 Maine 392, 2 Am. Rep. 55; Cooley's Const. Lim. (7th ed.) 266.

[2] The city, however, claims that the right to levy this tax (for in the contract and in the ordinances fixing the amount, and in the licenses, it is everywhere called a tax) does not rest upon the general statutes authorizing and limiting its right to levy taxes, but upon its power to enter into contracts by ordinance for compensation for the use of its streets and alleys, that this section 19 constitutes such a contract, and that the assessments are therefore valid; and that no subsequent legislation can impair such contract. Of course, if it be such a contract and is valid, this is true. We cannot, however, discover in the language used in the section 19 any indication that it was intended to express such a contract. Certainly it is most inapt for such a purpose, and of course it is to the language that we must first look in order to ascertain its meaning. It refers to a "license tax" upon the company, and section 558 of the Code provides that, "Every license shall be held to confer a personal privilege to transact the business, employment or profession which may be the subject of the license." There is no reference in section 19 or anywhere else in the ordinance to any license tax as compensation for the use of the streets. At the time the

ordinance was drawn, the case of *Newport News Ry. Co.* v. *Newport News*, 100 Va. 157, 40 S. E. 645, was pending. The railway company was there claiming that because it paid a property tax and had been granted a franchise to use the streets of Newport News, it was thereby impliedly relieved from a license tax for the privilege of doing business there, and that if it were compelled to pay a license tax for doing business at the same time that it paid for its franchise for the use of the streets, this would be double taxation. The court, however, decided that the city of Newport News had the right, as the law then was, to levy such license tax. This circumstance is helpful in determining the reason for the section 19 here under consideration. The city apparently intended to exclude any contention such as was then being made by the Newport News Company, that because it was granting new rights and confirming the company in its existing rights to use the streets of the city, it was thereby surrendering any of its taxing power, and while it was willing to indicate its purpose not to levy any license tax for the first twelve years, it desired to exclude any question as to its right to levy such license tax after the expiration of such period. Had the Newport News case been previously decided, it is doubtful whether the provision would have appeared at all, because, without any reservation, the city at that time had the right to levy a license tax, and any contract, if it were a contract, to abstain from levying a license tax during the twelve years was absolutely void; for a city cannot enter into a contract in derogation of its governmental power to levy taxes. A tax must be authorized by law, while compensation for the use of streets must be fixed by contract. If the city of Lynchburg, in 1901, had made a contract whereby it was to receive compensation for the use of its streets, then there can be no doubt whatever that such a contract would be valid and binding. But it would disarrange our whole system if the

right to levy taxes depended upon contract. We cannot doubt that if the city had intended to impose upon the company burdens in addition to those imposed by other sections of the ordinance for the use of its streets, it would have used language in section 19 appropriate for that purpose.

The record shows that the company has succeeded to the franchise of the Lynchburg Gas Company, and that franchise expressly provides that the company shall pay to the city "for the privilege of using the streets, highways, parks, and other public places as hereinbefore provided for, the sum of $20.00 for each mile of mains per annum," and there can be little reason to doubt that language similar to this would have been used in section 19 if it had been intended to have any relation whatever to compensation for the use of streets and alleys. This section 19 contains no promise or suggestion of a promise by the company of any compensation for the use of streets and alleys, but simply, clearly and expressly reserves to the city its rights of taxation, and does not remotely refer to or suggest any other subject. Its proper construction as to license taxes as well as to taxes on property is that it simply reserved rights which the city, as the law then was, already possessed, as well as the continuing right to levy such taxes as might be authorized by law.

The city is here, then, claiming a right of taxation which the legislature has withdrawn from it, and seeks to sustain itself by claiming such a contract as has been indicated. If considered as taxes—and everywhere in the record the levies are so denominated—they are void because without authority; they are equally void under the alleged contract, because properly construed it fails to sustain the city's claim. The city has no authority to levy any license tax whatever upon the company for its street railway business. It is authorized to levy a license tax on the company for

its heat, light and power business by section 36½ of the tax bill, not to exceed, however, one-half of one per cent of the gross receipts of such business in each year, subject to deductions for any sums paid by the company to such city or town as merchandise license or other license tax. The sum assessed greatly exceeds the amount authorized by law, and the assessment is therefore void.   The case is free from doubt, and has been correctly decided.

*Affirmed.*