(115 So. 444)

No. 26822.

REALTY OWNERS' PROTECTIVE ALLIANCE, Inc., v. CITY OF NEW ORLEANS et al.

Nov. 28, 1927. Rehearing Denied Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

1. Municipal corporations ☞70—Whether original tax law created contract between city and taxpayers held irrelevant, where subsequent legislation extended its operation (Act No. 19 of 1906; Act No. 116 of 1908; Const. 1913, art. 315; Const. 1921, art. 14, § 23).

In proceeding to enjoin further collection of tax because ordinance, in levying tax under the original tax law authorizing special tax as a basis for issuing bonds for sewerage, water, and drainage purposes, provided that the tax should cease in certain contingency, whether the tax law gave rise to a contract between the taxpayers and the city *held* irrelevant, where state had by subsequent legislation (Act No. 19 of 1906; Act No. 116 of 1908; Const. 1913, art. 315; Const. 1921, art. 14, § 23), extended the operation of the original law, and directed issuance of additional bonds.

2. Municipal corporations ☞70—Tax law for sewerage and water purposes held not to create contract between state and taxpayers, since state could not so limit its taxing power.

Proceedings involved in passing tax law authorizing special tax as a basis for issuing bonds for sewerage, water, and drainage purposes, which was approved by special constitutional, legislative, and municipal authority, *held* not to give rise to a contract between the state and the taxpayers, but was merely "legislation," since state could not by contract limit its powers in a matter relating to a subject within the general legislative power and involving the public welfare of the entire community affected by it.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Proceeding by Realty Owners' Protective Alliance, Inc., against City of New Orleans and another to enjoin the further collection of a tax. Judgment for defendants, and plaintiff appeals. Affirmed.

Richard A. Dowling and William R. Kinsella, both of New Orleans, for appellant.

Bertrand I. Cahn, City Atty., H. B. Curtis, Asst. City Atty., and Gus A. Llambias, Sp. Counsel for Sewerage and Water Board of New Orleans, all of New Orleans, for appellees.

ST. PAUL, J. On June 6, 1899, the property taxpayers of the city of New Orleans voted upon themselves until 1942 a special tax of two mills on the dollar of assessed value, as a basis for issuing bonds for some $12,000,000 for sewerage, water, and drainage purposes, which tax was approved by special constitutional, legislative, and municipal authority.

See the history thereof in full in State ex rel. Saunders v. Kohnke et al., 109 La. 838, 874, 33 So. 793.

### I.

In petitioning the city council to submit to the voters the proposition for levying said tax, the property holders "further petitioned" that said tax should cease in a certain contingency, to wit, whenever the surplus net proceeds of a certain other tax, known as the "debt tax," and levied under Act 110 of 1890 (Const. 1898, art. 314), should suffice to pay the interest on said bonds. And the city council, in the ordinance levying said tax, No. 15391, C. S., "reserved the right and declared its intention" to cease levying said tax whenever said contingency should occur.

### II.

Plaintiff, a property holder, seeks to enjoin the defendant from further collecting said two-mill tax, on the ground that the foregoing constituted "a contract" between the taxpayers and the city to cease levying said tax whenever said contingency came to pass, and that same has now come to pass because the surplus net proceeds of the other tax now more than suffice to pay the interest on said bonds.

### III.

[1, 2] It is quite irrelevant for the purposes of this controversy to inquire whether the foregoing evidences "a contract" between the taxpayers and the city, for it is certain that there has never been any contract entered into between the state and the taxpayers in connection with this tax. The state merely gave the city authority to levy the tax and issue the bonds; it simply "legislated" on the subject. State v. Kohnke, supra.

### IV.

Hence the state was quite free to levy any tax it saw fit, or (what amounts to the same thing) to continue or extend or increase any existing tax (within constitutional limits). But even if the proceedings could be said to be "fraught with strong elements of contract [with the state]," it is quite certain that the state could not by such a contract (i. e., with its own citizens relative to general taxation) tie its own hands in a matter relating to a subject within the domain of the general legislative power of the state and involving the public welfare of the entire community affected by it. State v. Kohnke, supra, citing Newton v. Mahoning County, 100 U. S. 548, 25 L. Ed. 710.

### V.

Accordingly, by legislative act and constitutional amendment in 1906, and again in 1908, the state authorized and directed the city to issue an additional $8,000,000 of bonds to complete its sewerage, water, and drainage system; and to that end dedicated to the payment of the capital and interest thereof (after providing for the first $12,000,000) the whole of the surplus net proceeds of the aforesaid "debt tax" (Act 110 of 1890) and the whole proceeds of the aforesaid two-mill tax of 1899 up to and until January 1, 1942 (see act 19 of 1906; Act 116 of 1908; Const. 1913, art. 315; Const. 1921, art. 14, § 23, p. 108).

### VI.

So that the aforesaid two-mill tax has now been extended by legislative act and constitutional amendment up to January 1, 1942, and the proceeds thereof dedicated to the payment of the $8,000,000 of bonds authorized in 1906 and 1908; and accordingly the city could not, even if it wished to do so, cease to levy said tax before January 1, 1942.

The injunction prayed for was therefore properly refused.

### Decree.

The judgment appealed from is therefore affirmed.