Memphis Union Station Company *v.* City of Memphis.

*(Nashville,* December Term, 1929.)

Opinion filed July 19, 1930.

CANADA, WILLIAMS & RUSSELL, for complainant, appellant.

WALTER CHANDLER and A. L. HEISKELL, for defendant, appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed to recover taxes alleged to have been illegally exacted by the city. Complainant's right to recover is dependent upon whether the power given the city to collect the tax under chapter 408, Private Acts of 1915, was withdrawn by subsequent legislative enactment.

Chapter 408 of the Private Acts of 1915 is an amendment to the charter of the City of Memphis. Section 1 imposed a privilege tax for use of the city upon each of 148 enumerated occupations, among them railroad terminal companies, taxed at $750 annually. Section 2 authorized the city to assess other taxable privileges not enumerated in the Act, and section 7 contains provisions as follows:

"In the absence of any ordinance upon the part of the City of Memphis, the privilege tax as herein specified and set out shall apply.

". . . and the fixing of a privilege tax by legislative act for the State and County shall not abrogate any taxes herein fixed, unless this Act shall be specifically repealed."

Section 8 provides:

"The City of Memphis shall have the right to by ordinance fix privilege taxes at an amount less than there is

herein set out, but no city ordinance shall be necessary to assess a tax equal to that levied for all State purposes and not herein mentioned and set out, but in default of an ordinance the amount levied by the State shall be the privilege tax of said City."

Through the demurrer of the defendant and the assignments of error to the action of the chancellor sustaining the demurrer, the question is presented of whether or not the power conferred upon the city by chapter 408, Private Acts of 1915, was revoked by the General Revenue Law, chapter 75, Acts of 1923. Section 4 of this Act includes numerous occupations taxed as privileges with no restriction upon the right of counties and municipalities. From section 4 the Legislature omitted express companies, sleeping car companies, news companies, telephone companies, telegraph companies and railroad terminal companies, which are grouped in section 5 immediately following the declaration:

"That engaging in the various kinds of business mentioned in this section is hereby declared to be a privilege for State purposes alone, and person, firm or corporation so engaged shall pay to the State Comptroller the tax hereinafter stated; and no county or municipality may impose any tax upon the privileges mentioned in this section."

It is shown by the bill that complainant, following a custom of previous years, and without advice of counsel, paid by mistake the privilege tax of $750 to the city for the years 1924 to 1928, inclusive, aggregating $3750, and it is charged that the tax for these years was illegally collected, for which the city is liable and under particular provisions of its charter should be required to refund.

No question of voluntary payment working estoppel against complainant's right to recover is involved. That

defense was not made. It is conceded by the city that its right to retain the money is dependent upon whether the Act of 1923 operated to repeal so much of chapter 408, Private Acts of 1915, as imposed a tax of $750 annually upon terminal companies for the benefit of the city.

In support of its right to collect the tax, the city relies upon the rule of construction that a general law does not by implication repeal a special act, upon certain provisions of chapter 408, Private Acts of 1915, and the Revenue Act of 1923.

The effect to be given to the two Acts, and any particular provision of either, is dependent upon the intention of the legislation to be discovered by reference to the words of the Acts and their context.

The provision of the 1923 Revenue Act referred to and relied upon by the city is as follows:

"The imposition of a privilege tax under this Act shall not be construed as a release or exemption from an *ad valorem* tax, nor shall this Act be construed as repealing any special Act heretofore passed, imposing a privilege tax."

This provision quoted from section 2 of the Revenue Act of 1923 appears in the Revenue Act of 1915, 1909, 1907 and 1899. It referred to statutes levying special privilege taxes for State and general purposes such as are mentioned and discussed in *Camden Fire Ins. Co.* v. *Haston,* 153 Tenn., 675. Occurring in Revenue Acts that antedate the Act of 1915, the provision cannot be particularly related to chapter 408, Private Acts of 1915.

The General Revenue Act of 1915, taxing occupations for general purposes, and by general purposes we mean for the use of the State and its agencies, the counties and municipalities, and the Private Act of 1915

amending the charter of the City of Memphis so as to fix municipal taxes upon the privileges enumerated were passed and approved on the same day. In the General Revenue Act of 1915 the Legislature grouped certain occupations under section 5, declared the tax upon them to be for the exclusive benefit of the State, and that the tax should be paid directly to the State Comptroller. Though among the occupations grouped under section 5 of the Revenue Act of 1915, railroad terminal companies were left open to county and municipal taxation, and they are among those enumerated and taxed in chapter 408, Private Acts of 1915, on behalf of the city. Telegraph companies, telephone companies, railroad companies, sleeping car companies and express companies, omitted from chapter 408, Private Acts of 1915, are expressly excluded from county and municipal taxation by the declaration that the tax upon them should be in lieu of all other taxes. *Memphis* v. *Foreign Ins. Co.*, 3 Shan. Cas., 463.

This distinctive grouping indicates a legislative intent to subject the privilege taxes against public service companies to the exclusive use of the State and to exclude the right of the counties and municipalities to participate in the taxation imposed upon them.

The provision of chapter 408, Private Acts of 1915, relied on by the city, is found in section 7 and reads:

"The fixing of a privilege tax by legislative act for the State and County shall not abrogate any taxes herein fixed, unless this Act shall be specifically repealed."

▉ The power of a municipal corporation to impose taxes is dependent upon legislative authority and that authority may be enlarged, restricted or entirely withheld according to the will of the Legislature. *State* v. *Bristol*, 109 Tenn., 315; *Memphis* v. *Express Co.*, 102

Tenn., 336; and see *Smiddy* v: *Memphis*, 140 Tenn., 97, and *O'Connor* v. *Memphis*, 6 Lea, 730.

We have seen that by chapter 408, Private Acts of 1915, the Legislature grouped certain occupations and imposed a privilege tax upon them for the use of the City of Memphis, excluding the right to tax express companies, sleeping car companies, railroad companies and telephone and telegraph companies. The Legislature did not then exclude as a subject of municipal taxation railroad terminal companies but included them among the occupations subject to both municipal and county taxation.

But in chapter .75, Acts of 1923, the Legislature classified railroad terminal companies among those above referred to as being the subjects of taxation for State purposes alone. Instead of declaring in the Revenue Act of 1923 that the State tax upon·previously assessed public service companies should be in lieu of all other taxes, and by that indirect method excluding the power of counties and municipalities to tax them, the Legislature grouped these companies under section 5 of the Revenue Act of 1923 and declared the tax upon them to be for State purposes alone, coupled with an express declaration that no county or municipality could impose a tax upon the privileges mentioned in this section, which includes railroad terminal companies.

As was said in *Ignaz* v. *Knoxville*, 1 Tenn. Chy., 1, a general act upon the subject of revenue could not be construed to apply to municipal corporations having in their charter particular provisions upon the same subject unless it is clearly apparent from the language of the Act that it was so intended.

But since a municipality cannot impose a tax where the Legislature has denied it the right to do so,

and as the Legislature may withdraw from a municipality a taxing power previously conferred and may appropriate the entire revenue from a particular source to the use of the State and declare that the county or municipality shall have no part of it, the Legislature could, by a provision of the General Revenue Act, withdraw the power previously conferred upon the city.

When the Legislature classified railroad terminal companies with those occupations taxed exclusively for State purposes and declared that no county or municipality could impose the tax, the effect of the declaration was to render inoperative so much of chapter 408, Private Acts of 1915, as was in direct conflict with the subsequent legislative declaration, and to exclude railroad terminal companies from the list of occupations that could be taxed by the municipality under the power granted by chapter 408, Private Acts of 1915.

No separate Act expressly repealing or amending the Private Act of 1915 could have been more effective than the express declaration found in section 5 of chapter 75, Acts of 1923, which we have quoted.

The city having conceded complainant's right to recover if the Revenue Act of 1923 deprived it of the power to tax railroad terminal companies, it follows that the judgment of the chancellor should be reversed. The cause will be remanded for further proceedings not inconsistent with the conclusion herein.