O'NIELL, Chief Justice
 

 (concurring in the decree).
 

 Since a majority of the members of the court have concluded that the state had a sufficient interest to bring this suit, and that the Attorney General had the right to sue on behalf of the bondholders and taxpayers of the city of New Orleans, I concur in the ruling that Judge .Byrnes was right in granting the preliminary injunction. I, doubt that the ruling that the state has a sufficient interest to bring the suit is in accord with the rulings rendered by this court in State v. C. S. Jackson & Co., 137 La. 931, 69 So. 751, and Saint v. Allen, 172 La. 350, 134 So. 246; and I doubt that the ruling. that the Attorney General had the right to sue on behalf of the taxpayers and bondholders can be reconciled with the ruling made in State v. Standard Oil Co., 164 La. 334, 113 So. 867, where it was held that the Attorney General could not sue in the name of the state on a cause of action which was vested in a legal subdivision of the state.
 

 Assuming, however, that the Attorney General had the authority to bring this suit in the name of the state, or for the protection of the bondholders and taxpayers of the city of New Orleans, it was his duty to ask the court to enjoin the carrying out of Act No. 36 of the Second Extra Session of 1934, when he (the Attorney General) came to the conclusion that the statute was unconstitutional.
 

 Judge Byrnes was right in granting a preliminary injunction when he decided that' the Attorney General had the authority to bring the suit. As a general rule, a statute is presumed to be constitutional until it has been judicially decreed to be unconstitutional. But, in this case, the state of Louisiana' herself is conceding and averring that her statute is unconstitutional. The Attorney. General has no cause of action unless the statute is unconstitutional, because his case is founded solely and entirely upon his contention that the statute is unconstitutional. And, in support of his contention, the Attorney General cites in his petition the decision rendered by this court in the ease of State of Louisiana ex rel. Saunders v. Kohnke et al., 109 La. 838, 33 So. 793, decided on the 19th of January, 1903. In that case it was hpid that a statute (Act No. 111 of 1902) which undertook to amend section 8 of Act No. 6 of the Extra Session of 1899, by changing the membership or composition of the Sewerage and Water Board, was violative of two separate and distinct articles or provisions of the Constitution. The Attorney General points out in his petition that Act No. 36 of the Second Extra Session of 1934, approved November 21,1934, attempts to do that which was attempted to be done by Act No. 111 of 1902, which was declared unconstitutional, for the two separate and distinct reasons given in the Kohnke Case, Judge Byrnes had before him also the fact that the Supreme Court of Louisiana had consistently followed and adhered to the decision in the Kohnke Case, and had expressly affirmed the decir
 
 *616
 
 sion in five cases: Saunders v. Board of Liquidation of City Debt, 110 La. 313, 34 So. 457; State ex rel. Sewerage & Water Board v. Michel, Secretary of State, 127 La. 685, 53 So. 926; New Orleans Taxpayers’ Protective Association v. Sewerage & Water Board, 132 La. 839, 61 So. 843; State v. Billhartz, 146 La. 855, 84 So. 120; and Realty Owners’ Protective Alliance v. City of New Orleans, 165 La. 159, 115 So. 444.
 

 Relying upon this settled jurisprudence, the Attorney General averred that Act No. 36, approved November 21, 1934, was unconstitutional, for several reasons, and specifically: (1) That the change proposed to be made by this statute could not be made without the consent of the New Orleans taxpayers and bondholders; (2) that the statute undertook to impair and to violate the conditions upon which the taxpayers of New Orleans had voted the special tax, and that the statute therefore undertook to impair the vested rights and the contract rights of the holders of the bonds which were issued under the contract; (3) that, under the constitutional amendment made pursuant to Acts No. 4 and No. 6 of 1899, Ex. Sess., and under article 313 of the Constitution of 1913, and section 23 of article 14 of the present Constitution, the Legislature could not change the membership or composition of the Sewerage and Water Board; (4) that Act No. 36, approved November 21, 1934, in so far as it attempted to add to or change the membership of the Sewerage and Water Board, or the mode of selection of the members thereof, as established by section 8 of Act No. 6 of 1899, Ex. Sess., was an attempt to violate and impair the terms and conditions of the property taxpayers’ petition, and to impair the vested rights and contract rights of the holders of the bonds issued under the contract. And the Attorney General concludes with this allegation in his petition, viz.:
 

 “That said Act No. 36 impairs the obligations of said contracts with the property taxpayers and bondholders, in violation of section 15 of article 4 of the Constitution of Louisiana, and section 10 of article 1 of the Constitution of the United States, and will deprive them of their property without due process of law, in’ violation of section 2 of article 1 of the Constitution of Louisiana, and the Fifth and Fourteenth Amendments of the Constitution of the United States.”
 

 The Attorney General, therefore, pleads and contends that Act No. 36 of the Second Extra Session of 1934, approved November 21,1934, is an attempt to violate the pertinent provisions of the Constitution of the United States, as Well as the pertinent provisions of the Constitution of Louisiana. That issue, however, is not before us at this time. I refer to the Attorney General’s allegations on the subject, merely to show the justification for-judge Byrnes to issue a preliminary injunction in this case.
 

 Besides, Judge Byrnes evidently had in mind, when he was asked for a writ of injunction in this case, the fact that the Supreme Court of the United States had decided, in a Louisiana case, that the construction given by the highest court of a state, to a statute or a provision of the Constitution of the state, had to be taken as correct, so far as contracts made under the construction were concerned, and that a subsequent judicial construction could not affect contracts already made. I refer to the case of State
 
 *618
 
 of Louisiana ex rel. Southern Bank v. Edward Pilsbury, 105 U. S. 278, 294, 26 L. Ed. 1096, where it was said:
 

 “Whether such a construction [by the Supreme Court of Louisiana] was a sound one is not an open question in considering the validity of the bonds. The exposition given by the highest tribunal of the State must be taken as correct so far as. contracts made under the act are concerned. Their validity and obligation cannot be impaired by any subsequent decision altering the construction. This doctrine applies as well to the construction of a provision of the organic law, as to the construction of a statute. The construction, so far as contract obligations incurred under it are concerned, constitutes a part of the law as much as if embodied in it. So far does this doctrine extend, that when a statute of two States, expressed in the same terms, is construed differently by the highest courts, they are treated by us as different laws, each embodying the particular construction of its own State, and enforced in accordance with it in all cases arising under it.” The decisions are here cited.
 

 The Attorney General alleged also in his petition that, if the court should refuse to issue a preliminary injunction, and if the new members provided for by Act No. 36 of the Second Extra Session of 1934, for the Sewerage and Water Board, should take office and attempt to discharge their duties under the alleged unconstitutional act, irreparable loss and injury and damage would result to the state of Louisiana and the city of New Orleans, and to the bondholders and taxpayers of the city.
 

 The Attorney General therefore disclosed in his petition a sufficient cause for the granting of a preliminary injunction, pending a hearing of his attack upon the constitutionality of Act No. 36, approved November 21, 1934.
 

 In the majority opinion rendered in this case, on this day, the case of State v. City of New Orleans, 151 La. 24, 91 So. 533, 537, is cited in support of the suggestion that certain police powers which were said to háve been vested in the city of New Orleans could have been, and were, reinvested in the state', “by subsequent amendments of its constitution, or by re-writing that instrument.” I do not concur in the suggestion that any constitutional amendment, or change in the provisions of the Constitution, made subsequent to the decision in the Kohnke Case, has altered the doctrine of the decision rendered in that case, and affirmed by the five decisions rendered since that case was decided. In the case of State v. City of New Orleans, cited in the majority opinion in this case, we said this on the subject, viz.:
 

 “The reason why that statute [meaning Act No. 36 of 1916] was declared unconstitutional [in the case of Board of Public Utilities v. New Orleans Ry. & Light Co., 145 La. 308, 82 So. 280] was that it violated the constitutional right of local self-government. It provided that a majority (four of the five) members of the local public utilities commission, thereby established, should be appointed by the Governor of the state; whereas article 319 of the Constitution of 1898 and of 1913 had reserved to the electors of the city the right to choose all public officers charged
 
 *620
 
 with the exercise of the police power of the city', in whole or in part. Observing that the power to fix rates for public utilities was an element of the police power, we held that the Legislature could not confer that power upon a local board, without reserving to the electors of .the city the right to choose the members of the board. The convention of 1921, in reserving to the electors of this city the right to choose their public officers — which was the city’s sheet anchor for home rule— also reserved to the Legislature the right to provide for local boards or commissions,
 
 without authority, however, to control the ordAna/ry governmental functions of the municipality.
 
 Article 14, § 22.” (The italics are mine..)
 

 I have italicized the qualifying words in section '22 of article 14 of the Constitution, .because it cannot be disputed that the function “of controlling” the water and sewerage system of a city is one of “the ordinary governmental functions of municipal government,” as the Constitution says. However, the violation of the home-rule clauses of the Constitution was only one of the violations for .which Act No. Ill of 1902 was declared unconstitutional in the Kohnke Case. And these home-rule clauses in section 22 of article 14 of the Constitution of 1921 are as formidable now as they were when the Kohnke Case was decided, as far as “the ordinary governmental functions of municipal government” are concerned. It is not contended that the other unconstitutional feature of Act No. Ill .of 1902, which was found in the Kohnke Case, has been abolished by any subsequent change in the" organic law.
 

 Eor these reasons I concur in the decree affirming the judgment granting a preliminary injunction in this case.