# Wytheville

## DANVILLE TRACTION & POWER COMPANY v. CITY OF DANVILLE.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*Harris, Harvey & Brown* and *Crews & Clement,* for the plaintiff in error.

*A. M. Aiken,* for the defendant in error.

Spratley, J., delivered the opinion of the court.

The city of Danville in April, 1936, instituted an action by notice of motion against the Danville Traction & Power Company, to recover the sum of $10,337.60 with certain interest thereon. This amount was claimed to be due by virtue of a contract, in the form of a franchise ordinance, allegedly providing for compensation for use of the city's streets. Neither party desiring a jury, the case was submitted to the judge of the corporation court of Danville, who, after hearing the evidence and argument of counsel, found for the plaintiff.

The Danville Traction & Power Company, hereinafter called the defendant, is the successor corporation to the Danville Street Car Company. It has taken over and possesses all of the rights, privileges and franchises of the former corporation, granted under the ordinance in question here, subject to all of the obligations and duties enforced thereunder.

The ordinance was enacted in 1899, and was to continue for fifty years from and after the first day of January, 1900. So much of it as is pertinent to our inquiry, reads as follows:

"Sec. 627. (1) The Danville Street Car Company, a corporation duly chartered, organized and existing under the laws of the State of Virginia, its successors and assigns, in addition to the rights, privileges and franchises heretofore granted to the said company by the said city, shall have under and subject to the conditions and restrictions herein contained and declared, the further rights, privileges and franchises, and the same are hereby granted to said company, its successors and assigns, to locate, lay, construct, operate and maintain its street railway within the limits of the City of Danville, for the carrying of passengers by, over and along the following streets and routes, namely:" (Here follows a list of streets and routes.)

"(2) The said Danville Street Car Company, its successors and assigns in addition to the aforesaid rights, privileges and franchises, shall have, under and subject to the conditions and restrictions herein contained and declared, the further rights, privileges and franchises and the same are hereby granted to said company, its successors and assigns, to locate, lay, construct, operate and maintain its street railway within the limits of the said City of Danville for the carrying of pas-

sengers by single or double track in, over and along Union Street, Jefferson Street, etc., * * * or any part of said street, and to accomplish these ends and for the purpose of operating the railway over the streets, avenues and bridge aforesaid, to lay and put in all necessary sidings and turnouts, and to erect its poles for trolley and feed wires along the sidewalks of the said streets and avenue and all other appliances and appurtenances necessary and proper, and to string its wires upon said poles and over and across said iron free bridge."

"(19) That the City of Danville, respecting and continuing its assent to the exemptions from municipal taxation heretofore granted to the said Danville Street Car Company, hereby expressly reserves the right to levy a property tax on all the property to be constructed and owned hereunder within the city limits by said company, its successors and assigns, at the same rate other property within the said city is taxed, * * * *and that in consideration of the rights, privileges and franchises herein granted the said company, its successors and assigns, shall annually after January 1, 1901, pay to said city, as license taxes are paid, an amount equal to one-half of one percentum of the first forty thousand dollars of the gross receipts of said company, its successors and assigns, from all the railways operated by said company, its successors and assigns, and one percentum on the said gross receipts in excess of said forty thousand dollars.*" (Italics supplied.)

The property tax of the traction company due to the city of Danville and its franchise tax due to the State of Virginia, have been paid, and are not in question here. The stated percentage specified in the latter part of section 19 of the ordinance has been paid each year through the year 1927. No legal action was taken by the city to collect for subsequent years until the institution of this action in 1936. It appears that certain assessing and collecting officials of the city of Danville termed the percentage payment as a license or franchise tax, and so billed the traction company and so receipted it for whatever payments were made. The company raised no questions as to the nature of the obligation under which it made such payments.

The traction company now contends that the payment

provided to be made under the ordinance, is a franchise or license tax, and, therefore, not collectible under the Constitution and statutes of the State. The city takes the position that it is a contract or agreement by ordinance, providing for compensation for the use of its streets and avenues.

It is agreed by both parties that if the ordinance provides for a franchise or license tax, the city cannot recover; but if it provides for compensation for use of the streets, the city is entitled to recover.

Section 177 of the Constitution and section 216 of the Tax Code 1936 (Code 1936, Appendix p. 2469, unchanged since 1927, so far as we are here concerned), both provide that the annual State franchise tax upon gross earnings, required of railway corporations and the *ad valorem* taxes on their property, shall be in lieu of all taxes or license charges whatsoever. The Constitution and the statute, however, both contain a proviso that nothing contained therein shall annul or interfere with or prevent any contract or agreement by ordinance between such corporations and municipalities as to compensation for the use of the streets or avenues of such municipalities by such corporations.

The effect of the constitutional provision and of the statute is to deprive a city of the right to levy a franchise or license tax upon a railway corporation. It is well settled that the right of a city to levy taxes cannot be made to depend upon contract. On the other hand, it is equally well settled that the city may make a valid and binding contract whereby it may receive compensation for the use of its streets.

Does the ordinance of 1899 provide for a license tax, or does it provide for compensation for use of the streets? The traction company, as a corporate body, was brought into being by the State of Virginia, when its charter was granted. Its occupational privilege, the privilege of doing a railway business, was therein granted by the State. Its charter, however, did not confer upon it the right or privilege to use the streets of the city of Danville, without the consent of the latter. The city had the right to control the use of its streets, and except through such control, it had no power to authorize, or to prevent the conduct of a lawful business.

■ In 1899, before the amendment to the present Constitution, the city was vested with power to impose license or privilege taxes on such railway corporation. But while it could levy a tax for the privilege of doing business, it could not grant a right to do business as a matter of contract. The power of taxation was then, and is now, a governmental power, subject to modification, or repeal at the pleasure of the legislature, and not under the control of the city. An attempt to make a contract relating to taxation would have exceeded the powers of the city. *City of Lynchburg* v. *Lynchburg Traction & Light Company*, 124 Va. 130, 97 S. E. 780.

Nor do we find in the words of section 19 of the ordinance under review any language indicating that the city intended to exceed its power by making a contract relating to taxation.

The learned trial judge, in his opinion, notes that in amendments to the ordinance in 1914 and in 1923, granting the company the right to lay its tracks over additional streets, with the exception of a slight change in phraseology, the same provision as to the payment of a percentage of gross receipts is contained therein. This brought him to a reasonable conclusion that since it must be presumed that the parties knew that the Constitution, in plain terms, prohibited local taxation by way of license taxes, and that they could not contract over a period of years for an occupational tax, they intended to contract as to a lawful subject matter.

It seems to us here, that if we determine what is meant by the phrase "rights, privileges and franchises," the correct answer is found. As we have seen, the right and privilege to do a railway business had been conferred in the charter of the traction company, but no right to use the city's streets was therein granted. If the "rights, privileges and franchises" granted are the use of the streets of the city, then plainly, it is the agreement of the parties that the stated percentages are reserved to the city as compensation for such use, and not for the privilege of doing business. The consideration for the agreement, therefore, is "the right to locate, lay, construct, operate and maintain its street railway within the limits of the city of Danville, for the carrying of passengers by, over

and along the following streets and routes, namely: * * *." The compensation for this consideration is the percentage of gross receipts, specifically stated and agreed upon.

Here there is a consideration moving by consent from and to each of the parties. The amount to be paid is fixed. The use to be allowed is determined. Neither present nor succeeding councils of the city may change or vary the amount to be paid, or the terms of the contract, except by mutual consent of the parties. Yet no consent is required for the imposition or change of a tax or taxable rate. The ordinance provision has all the characteristics of a contract and lacks those of a tax.

The defendant further contends that the action of certain city officials in terming the compensation as a license or franchise tax, determines its nature. Yet, at the same time, from 1902, and through 1927, the traction company without protest paid the charge to the city. We think the answer is that no city official was competent to determine whether the assessment was a license tax, or compensation for use of the streets. Likewise, no officer of the traction company, without specific authority from his corporation, can be held to have bound it on account of the twenty-five annual payments made. It was not within the province of either set of officials and officers to make a judicial determination of the question in issue.

We do not think the phrase "as license taxes are paid" is indicative of the character of the payment specified. The words in that phrase relate to the mechanics of payment and collection, and have reference to the person to whom payment is to be made, by whom to be determined, and the manner and time of payment and collection.

Both plaintiff and defendant rely upon the case of the *City of Lynchburg* v. *Lynchburg Traction & Light Company*, *supra*. An examination of this case discloses the language of the Lynchburg ordinance to be wholly dissimilar from that of the Danville ordinance. There the section of the ordinance relied on, reads thus: "That the city expressly reserves the right to levy a property tax on all the property to be constructed and owned by the party of the second part, or its assigns, under this contract, within the city limits, at the same

rate that other property within the city is taxed; and the said city likewise reserves the right after the expiration of twelve years from this date, to levy a license tax upon the said company whenever it shall think proper to do so."

It is true there the city of Lynchburg contended that the above ordinance was a contract providing for compensation for the right to use its streets. Yet, the language of the section refers to nothing except the right to levy a tax, which admittedly it had no right to reserve. Nor does it fix the amount to be paid, or make the slightest suggestion that it is in consideration of the right to use the streets. If we look to the language to ascertain its meaning, it uses the words "a license tax". There is no indication even that the license tax is to be compensation for the use of the streets. Is it not apparent, as Justice Prentis said in that case, that in view of the current agitation at that time with reference to the right of cities to levy such a license tax that the city of Lynchburg intended to exclude any contention as to its future taxing power under the then existing Constitution, a taxing power lost after the adoption of the amendments to that Constitution in 1902?

In the above case for the purpose of comparison, the court noted with evident approval the right of the city to provide by contract for compensation for the use of its streets. There the same power company had succeeded to the franchise of a gas company which operated under another ordinance, in which it was expressly provided that the gas company should pay to the city "for the privilege of using the streets, etc., the sum of twenty dollars per each mile of mains per annum." The court observed that there was little reason to doubt that language similar to the above would have been used in the other ordinance if it had been intended to provide for compensation for the use of the streets.

A decision in each case must depend upon the peculiar facts of that case. The language of the ordinance under consideration here, we think, makes an agreement between the parties for compensation for use of the streets of the city, within the constitutional and statutory provisos.

The judgment of the trial court is affirmed.

*Affirmed.*