FLEUR de LIS MOTOR INNS, INC., d/b/a Des Moines Hilton Inn, Everett R. Scott and Kenneth K. Fillenwarth, d/b/a Fillenwarth Beach, and Iowa Automotive Wholesaler's Association, Appellants,

v.

Gerald D. BAIR, Director of Revenue of the State of Iowa, City of Des Moines, Iowa, and City of Arnolds Park, Iowa, Appellees,

and

Polk County, Iowa, Intervenor.

No. 64747.

Supreme Court of Iowa.

Feb. 18, 1981.

Richard C. Turner, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Gerald A. Kuehn, Asst. Atty. Gen., for appellee Bair.

M. A. Iverson and R. Michael Hayes, Des Moines City Sols., for appellee City of Des Moines.

W. M. Cornwall, Arnolds Park City Atty., for appellee City of Arnolds Park.

Dan L. Johnston, Polk County Atty., and E. LaVon French, Asst. Polk County Atty., for intervenor Polk County.

Nolden Gentry, Des Moines, for amicus curiae Greater Des Moines Chamber of Commerce.

Roger J. Hudson, Des Moines, for amicus curiae Greater Des Moines Hotel & Motel Association.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and ALLBEE, JJ.

UHLENHOPP, Justice.

In this appeal we pass upon the validity of and construe the Iowa local option hotel-motel tax statute. We are in agreement with the trial court's findings and conclusions and therefore consider only the essen-

tial issues. We use the term municipalities in the sense of both cities and counties.

In 1978 the General Assembly enacted a statute allowing municipalities to impose hotel-motel taxes at their option. The Cities of Des Moines and Arnolds Park adopted such ordinances and the Polk County Board of Supervisors adopted such a resolution. The affected voters in each instance approved the measure. Subsequent to that approval, the General Assembly twice amended the statute.

The portion of the statute of primary importance reads as follows in its amended form. It authorizes municipalities to impose a tax

upon the gross receipts from the renting of any and all sleeping rooms, apartments, or sleeping quarters in any hotel, motel, inn, public lodging house, rooming house, or tourist court, or in any place where sleeping accommodations are furnished to transient guests for rent, whether with or without meals except the gross receipts from the renting of sleeping rooms in dormitories and in memorial unions at all universities and colleges located in the state of Iowa universities and colleges.... "Renting" and "rent" include any kind of direct or indirect charge for such sleeping rooms, apartments, sleeping quarters, or the use thereof. However, such tax shall not apply to the gross receipts from the renting of a sleeping room, apartment, or sleeping quarters while rented by the same person for a period of more than thirty-one consecutive days.

§ 422A.1, The Code 1979, *as amended by* 1979 Sess., 68th G.A., chs. 99, 100. The amendments added the underlined words and deleted the stricken words. The effect of the amendments was to restrict the tax to sleeping rooms in the covered establishments, and to expand the exemption from state university and college dormitories and memorial unions to all those of colleges and universities in Iowa. Additional portions of the amendments clarified when and how the tax was to be imposed, changed, or repealed. Those portions dealt principally with submitting to the voters proposed increases in the tax, prohibiting repeal or reduction of the tax if outstanding obligations were payable from the tax revenues unless funds were set aside and pledged to pay the obligations, authorizing payment from hotel-motel tax revenues of bonds issued for purposes stated in the original act, requiring elections for new bond issues, and making specified bond provisions of the Code applicable to hotel-motel tax bonds.

Plaintiff hotel-motel-resort operators sought a declaratory judgment that the amended statute is unconstitutional in relation to Des Moines, Arnolds Park, and Polk County and that the Des Moines and Arnolds Park ordinances and the Polk County resolution are void. In the alternative, plaintiffs sought a writ of mandamus compelling collection of the tax upon the gross receipts from sleeping rooms in hospitals. The trial court denied plaintiffs' demands, and this appeal by plaintiffs followed.

In their appeal plaintiffs raise three issues, but two of them are determinative: (1) whether the 1979 legislative amendments to the statute nullified prior imposition of the taxes in Des Moines, Arnolds Park, and Polk County, and (2) whether sleeping rooms in hospitals are taxable under the statute.

I. *Validity of existing taxes after 1979 amendments.* The statutory amendments mainly clarified legislative intent in the original enactment and strengthened the original bond provisions—probably to make bonds acceptable to underwriters. They did not increase or decrease the hotel-motel tax rate in any city or county or impose or terminate the tax in any city or county which had not done so itself. We have no doubt that these amendments from their effective date were intended to apply prospectively to all Iowa hotel-motel tax ordinances and resolutions, whether then existing or thereafter adopted. § 4.5, The Code; *Benton County v. Wubbena*, 300 N.W. 168 (Iowa 1981). The amendments did not require that then existing hotel-motel taxes be readopted, and we agree with the trial court that the Gen-

eral Assembly intended those taxes should continue in effect and be subject to the statute as amended. *Cf. Board of Park Commissioners v. City of Marshalltown*, 244 Iowa 884, 849, 58 N.W.2d 394, 397 (1953) (no implied repeal). The initial question is whether the General Assembly had *power* to impose the amendments on municipalities which had already adopted the tax. We are not dealing here with a claim by bondholders that the obligation under their bonds has been impaired. *See* 56 Am.Jur.2d *Municipal Corporations* § 100, at 157 (1971). *See also* §§ 4.10, 4.13, The Code.

■ A. The seat of the taxing power in Iowa is the General Assembly. That body could enact a compulsory hotel-motel tax throughout the state, and it could subsequently modify or repeal the tax. As stated in 71 Am.Jur.2d *State and Local Taxation* § 90 (1973):

> The grant by the legislature of the taxing power to municipalities is subject to revocation, modification, and other legislative control. It is not a contract, and may be withdrawn by the legislature at any time. Such right of revocation or modification is subject, however, to the right of creditors of the municipality to have such power exercised for the purpose of satisfying their claims. It should be noted, in this connection, that if the legislature confers the power of taxation upon a municipal corporation, the power so delegated continues until it is recalled, and the mere failure of the legislature to exercise a part of its power cannot be construed as an impairment or diminution of that which it has lawfully delegated to a subordinate agency of taxation, for the ideas of propriety, expediency, and policy which influence all schemes of taxation may not be identical in the municipal council and the legislature of the state.

*Accord*, 64 C.J.S. *Municipal Corporations* § 1984 (1950). *See also Williamson v. New Jersey*, 130 U.S. 189, 199, 9 S.Ct. 453, 457, 32 L.Ed. 915, 919 (1889); *Zoercher v. Agler*, 202 Ind. 214, 225, 172 N.E. 186, 190 (1930); *Realty Owners' Protective Alliance, Inc. v. City of New Orleans*, 165 La. 159, 162, 115

So. 444, 444–45 (1927); *Board of Supervisors v. Hubinger*, 137 Mich. 72, 77–78, 100 N.W. 261, 263 (1904); *Bryson City Bank v. Town of Bryson City*, 213 N.C. 165, 167, 195 S.E. 398, 399 (1938); *Wilkes-Barre Appeal*, 208 Pa.Super. 424, 427, 222 A.2d 499, 501 (1966); *Memphis Union Station Co. v. City of Memphis*, 161 Tenn. 203, 208, 30 S.W.2d 240, 242–43 (1930); *Danville Traction & Power Co. v. City of Danville*, 168 Va. 430, 435, 191 S.E. 592, 594 (1937).

Based upon the general taxing authority of the General Assembly, we hold that the Assembly had power to enact the amendments and make them applicable prospectively in municipalities although those units had previously imposed the tax under the statute in its original form. The voters' imposition of the tax was subject to the power of the General Assembly to modify or repeal the tax. *See Pidgeon-Thomas Iron Co. v. Garner*, 495 S.W.2d 826, 829–30 (Tenn.1973). The Assembly's exercise of its power would be valid unless it cut across some particular *constitutional limitation*.

B. The operators claim that application of the amendments to the municipalities which had already imposed the tax, without new tax elections in those municipalities, would cut across two clauses in the Iowa Constitution: article I, section 6 ("All laws of a general nature shall have a uniform operation"), and article III, section 30 ("where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State"). They arrive at this conclusion by the following reasoning.

The municipalities which vote to impose the tax after the amendments were enacted voluntarily accept the amendments by their vote. The municipalities which voted the tax under the original act, however, never voluntarily accepted the amendments; the amendments were forced upon them. Those municipalities, the operators claim, have thus been set apart as a class, contrary to the clauses prohibiting special or discriminatory legislation.

Initially the argument has appeal, but it cannot withstand close analysis under this

record. In deciding this constitutional issue, we do not hold that the General Assembly could never change a local option tax statute in such way that a second vote in an affected municipality would not be required; we leave that broad question undecided, whether the local option is exercised by the local voters or the local governing body, and we deal only with the present situation.

The quoted guaranties in our constitution are not absolute; they lay down the general principle of uniformity in laws. *Borden v. Selden*, 259 Iowa 808, 814–15, 146 N.W.2d 306, 311 (1966). We stated the rule governing constitutional challenges in *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977) (citations omitted):

> The general principles applicable to the determination of the constitutionality of the challenged statutory provision are well established. All presumptions are in favor of the constitutionality of the statute and it will not be held invalid unless it is clear, plain and palpable that such decision is required. The legislature may pass any kind of legislation it sees fit so long as it does not infringe the state or federal constitutions. Courts do not pass on the policy, wisdom, advisability or justice of a statute. The remedy for those who contend legislation which is within constitutional bounds is unwise or oppressive is with the legislature. The burden is not upon defendant Selden and intervenor state appeal board to prove the act is constitutional. Plaintiffs have the burden to demonstrate beyond a reasonable doubt the act violates the constitutional provision invoked and to point out with particularity the details of the alleged invalidity. To sustain this burden plaintiffs must negative every reasonable basis which may support the statute. Every reasonable doubt is resolved in favor of constitutionality.

We also stated on the same page:

> In evaluating plaintiffs' challenge, we recognize the legislature's wide discretion in determining classifications to which its act shall apply. Moreover, in tax matters even more than in other fields legislatures possess the greatest freedom in classification. The differences upon which the classification is based need not be great or conspicuous.

We stated further in *State Board of Regents v. Lindquist*, 188 N.W.2d 320, 324 (Iowa 1971) (citations omitted):

> In determining whether a general law can be made applicable, courts consider the nature and purpose of the legislation and the conditions and circumstances under which it was enacted. If a general law clearly can be made applicable, a special law is impermissible. On the other hand, the usual presumption in favor of constitutionality attends a legislative act of this kind. This court itself has held the requirement that a special act shall not be used where a general one "can be made applicable" is not to be so tightly applied as to tie the hands of the legislature unduly.

The court made the following statements in *Dickinson v. Porter*, 240 Iowa 393, 401, 408, 35 N.W.2d 66, 72, 76 (1948), *appeal dismissed*, 338 U.S. 843, 70 S.Ct. 88, 94 L.Ed. 515 (1949) (citations omitted):

> It is well recognized the legislature has a wide discretion in determining classifications to which its acts shall apply. In tax matters even more than in other fields legislatures possess the greatest freedom in classification.
>
> It is not sufficient that the court may regard the reason for the classification a poor one. The differences upon which the classification is based need not be great or conspicuous.
>
> "An iron rule of equal taxation" is neither attainable nor necessary.
>
> Further, a classification, as in the act here, for the purpose of proportioning the tax may be valid even though such a classification would be invalid for the purpose of applying a complete exemption.
>
> . . . .
>
> A classification is not arbitrary which rests upon some reason of public policy . . . .

As stated in *Watson v. State Comptroller,* 254 U.S. 122, 124, 125, 41 S.Ct. 43, 44, 65 L.Ed. 170, 175, "Any classification is permissible which has a reasonable relation to some permitted end of governmental action. * * * It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.' (Citations.)"

*See also Barhorst v. City of St. Louis,* 423 S.W.2d 843, 846 (Mo.1968).

■ We think for several reasons that the amendments involved here do not contravene the constitutional uniformity clauses. First, the amendments are essentially curative legislation; they do not constitute an original imposition, authorization, increase, or reduction of a tax, but incorporate amendatory provisions which should probably have been in the statute originally to make it workable. By their nature, curative acts typically affect certain individuals or entities, *Cook v. Hannah,* 230 Iowa 249, 252, 297 N.W. 262, 264, *cert. denied,* 314 U.S. 691, 62 S.Ct. 361, 86 L.Ed. 553 (1941), and they are ordinarily valid as against the uniformity clauses of our constitution if they would have been within the authority of the legislature to enact originally. *Iowa Electric Light & Power Co. v. Incorporated Town of Grand Junction,* 221 Iowa 441, 446, 264 N.W. 84, 86 (1935).

Second, and apart from being curative, the amendments are general in nature and do not single out certain entities or classes; all municipalities are subject to the amendments. This militates in favor of their validity, even though when applied they incidentally affect some entities differently due to differing fact situations. *Cook v. Dewey,* 233 Iowa 516, 519, 10 N.W.2d 8, 10 (1943).

Third, the amendments do not increase the substantive burdens of the municipalities which have imposed the tax; the hotel-motel tax rate remains the same there. The rate can only be increased by them, and elsewhere, by a vote of the electors themselves.

Finally on this point, the municipalities which previously opted to impose the tax can opt out of it; the amendments do not foreclose this. *See Chappell v. Board of Directors,* 241 Iowa 230, 237, 39 N.W.2d 628, 632 (1949) ("generally speaking, the voters at any regular election or special election called for that purpose may order the tax terminated or modified"—schoolhouse tax); 1979 Sess., 68 G.A., ch. 100, § 1. Those municipalities could thereafter, if they desired, opt to reimpose the tax by a vote under the amendments. True, to opt out would, under the amendments, require those municipalities to set aside and pledge funds for any bonds they have already issued which are payable from hotel-motel tax revenue, but this would be required anyway to avoid impairment of the obligation of contracts. 71 Am.Jur.2d *State and Local Taxation* § 111 (1973); 16 C.J.S. *Constitutional Law* § 312, at 1339 (1956).

We conclude the trial court was right in holding that the General Assembly had power to make the amendments applicable to all municipalities without new elections. The Assembly did not transgress the uniformity clauses of the constitution in doing so.

■ II. *Hospital rooms.* The second issue requires statutory construction to determine whether hospital sleeping rooms are taxable under the statute. By deciding this issue we do not indicate any opinion on the question of the operators' standing to raise it.

The objective of statutory construction is to give effect to the intention of the General Assembly. *Hartman v. Merged Area VI Community College,* 270 N.W.2d 822, 825 (Iowa 1978); *City of Des Moines v. Elliott,* 267 N.W.2d 44, 45 (Iowa 1978); *Doe v. Ray,* 251 N.W.2d 496, 500 (Iowa 1977). The Assembly is presumed to have inserted every part of a statute for a purpose, and to have intended that every part shall be carried into effect. The legislative intent is to be gleaned from the statute as a whole, not from a particular part only. *State v. Prybil,* 211 N.W.2d 308, 311 (Iowa 1973); *Northern Natural Gas Co. v. Forst,* 205 N.W.2d 692, 695 (Iowa 1973); *Goergen v.*

*State Tax Commission,* 165 N.W.2d 782, 785 (Iowa 1969).

In construing two acts, one general and one specific, the following principle applies:

"For purposes of interpretation, legislative enactments have long been classed as either general or special, and given different effect on other enactments dependent as they are found to fall into one class or the other. Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling . . . ."

*Goergen,* 165 N.W.2d at 787 (quoting 82 C.J.S. *Statutes* § 369 (1953)); *accord, Doe,* 251 N.W.2d at 501; *Shriver v. City of Jefferson,* 190 N.W.2d 838, 840 (Iowa 1971).

Similarly, in construing a statute containing both general and specific language, two rules of construction are followed:

If the legislative intent or general meaning of a statute is not clear, the meaning of doubtful words may be determined by reference to their association with other associated words and phrases. Thus, when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word. But this is so only if the result is consistent with the legislative intent, for the maxim noscitur a sociis is a mere guide to legislative intent. The rule will not be applied where there is "no ambiguity," or to thwart the legislative intent, or to make general words meaningless.

. . . . .

The principle of noscitur a sociis applies to sections and sentences in a manner similar to the application of the doctrine of in pari materia to statutes covering the same subject matter. Likewise, the rule of noscitur a sociis and the rule of ejusdem generis produce identical results in most situations.

. . . .

A variation of the doctrine of noscitur a sociis is that of ejusdem generis. Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Where the opposite sequence is found, i. e., specific words following a general, the doctrine is equally applicable, restricting application of the general term to things that are similar to those enumerated.

2A Sutherland, *Statutes and Statutory Construction* §§ 47.16, 47.17 (4th ed. C. Sands 1973); *see Hartman,* 270 N.W.2d at 825; *Wright v. State Board of Engineering Examiners,* 250 N.W.2d 412, 413–14 (Iowa 1977); *State v. Bishop,* 257 Iowa 336, 341–42, 132 N.W.2d 455, 458 (1965).

Plaintiffs, seeking to hold hospital rooms taxable, seize on the statutory words in section 422A.1, "or in any place where sleeping accommodations are furnished to transient guests for rent." We believe, however, that this clause is to be read in conjunction with the more specific provision immediately proceeding it, "all sleeping rooms, apartments or sleeping quarters in any hotel, motel, inn, public lodging house, rooming house, or tourist court." This is an instance of reading the parts of a statute together to ascertain legislative intent. Moreover, the words "sleeping accommodation," "transient guests," and "for rent" do not appear to contemplate patients in hospital wards or rooms. Tax statutes are not enlarged by construction. *Scott County Conservation Board v. Briggs,* 229 N.W.2d 126, 127 (Iowa 1975).

This court faced similar language in *Hull Hospital v. Wheeler,* 216 Iowa 1394, 250

N.W. 637 (1933). In that case a hospital attempted to utilize the hotel lien act to retain and then sell rings it had removed from a patient when her hands swelled, and to apply the proceeds on the patient's hospital bill. The court examined the hotel lien act for definitions and other signs of legislative intent. "Hotel" was defined in the act to include "inn, rooming house, and eating house, or any structure where rooms or board are furnished, whether to permanent or transient occupants." This court stated:

> In view of the broad language of these sections, it is insisted by the appellant that a hotel, as there defined, includes a hospital. A history of the development of hotels and hospitals reveals such a wide difference in the fundamental purposes of the two institutions that the legislature cannot be held to have declared a hospital to be a hotel unless the intent so to do clearly appears. It is said in the Encyclopedia Americana, vol. 14, p. 436, that a hotel is "an inn or public tavern". Webster's New International Dictionary defines a hotel to be: "A house for entertaining strangers or travelers; an inn."
>
> . . . .
>
> ... [T]here is a plain limitation upon the kind of business that shall constitute a hotel. A hotel keeper entertains his guests. He furnishes them food, drink, shelter, and lodging. Likewise, an eating house furnishes its patrons food and drink. So, too, a rooming house provides the roomer with lodging and shelter. While the eating house and the rooming house were not included in the original meaning of the word "hotel", yet there is a relationship between the rooming house, the eating house, and the hotel. On the other hand, a hospital, where the sick and injured are cared for, nurses its patients and gives them medical attention. These are the primary purposes of such hospital.... Obviously the room and board provided by the hospital are merely incidental to the nursing and medical treatment, if not part of it. For

instance, a guest goes to a hotel for lodging, shelter, food, and drink. Such is the purpose of the hotel. When a man is sick, however, he goes to the hospital, not merely for food, drink, lodging, and shelter, but rather for nursing and medical care. Thereby, he becomes a patient in the hospital, as distinguished from a guest in a hotel.

*Id.* at 1396–97, 250 N.W. at 638 (citations omitted). The court concluded:

> With this historical background, it is quite apparent that the legislature of Iowa in sections 10348 and 10349, above quoted, did not intend to include a hospital in its definition of hotel. In subdivision 1 of section 10348, above quoted, the legislature, when using the phrase "any structure where rooms or board are furnished, whether to permanent or transient occupants", intended to restrict its meaning to businesses like hotels, rooming houses, and eating houses. Also, when the legislature in subdivision 3 of that section used the phrase, "or any legal occupant of any hotel as herein defined", it attempted to classify the persons there mentioned as guests, boarders, or patrons of hotels, rooming houses, and boarding houses.
>
> "A fundamental rule of construction is that, where particular words are followed by general ones, the general are restricted in meaning to objects of a like kind with those specified."

*Id.* at 1398, 250 N.W. at 639 (citations omitted).

We approve the trial court's construction that the statute does not authorize municipalities to levy hospital room taxes.

We thus uphold the judgment.

AFFIRMED.